STATE of Wisconsin, Plaintiff-Respondent,†

v.

Charles A. DUNLAP, a/k/a Char Lee Dancing Eagle,
Defendant-Appellant.

Court of Appeals

*No. 99–2189–CR. Submitted on briefs May 4, 2000.—Decided
October 4, 2000.*

2000 WI App 251

(Also reported in 620 N.W.2d 398.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jack E. Schairer*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Marguerite M. Moeller*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Charles A. Dunlap appeals from a judgment of conviction for first-degree sexual assault of a child contrary to WIS. STAT. § 948.02(1) (1987–88)[1] and an order denying his postconviction motion requesting a new trial. Dunlap argues that the State opened the door to cross-examination of its expert witness about complainant Jamie F.'s sexual behavior prior to the alleged assault when the expert testified that Jamie's behavior was consistent with that of child sexual assault victims. Because the information about Jamie's behavior was in a report made by the expert using statements from an individual who is now deceased, the circuit court ruled that the evidence was inadmissible as hearsay and that the

---

[1] All references to the Wisconsin Statutes are to the 1987–88 version unless otherwise noted.

State had not opened the door to such evidence through the expert's testimony. Dunlap asserts that this evidentiary decision was erroneous and prejudicial.

¶ 2. Dunlap also posits an alternative argument. He claims that his trial counsel was ineffective for failing to request a pretrial hearing as required by WIS. STAT. § 972.11, the rape shield law, to attempt to get the evidence of Jamie's prior sexual behavior admitted.

¶ 3. Because we conclude that Dunlap was erroneously precluded from cross-examining the expert about Jamie's sexual behavior prior to Dunlap's alleged assault, we do not consider his alternative argument. We reverse the conviction and order a new trial.

## BACKGROUND

¶ 4. On November 7, 1989, Dunlap babysat six-year-old Jamie at the home of Susan Smith and Gary Cox. Two days later, Jamie informed her father that Dunlap had touched her private parts when he babysat her, and her father notified the police. When reporting the incident to the police, Jamie's mother stated that her daughter further revealed that Dunlap "had taken her to bed, laid on the [bed] with her, and placed his hand inside her underwear and played with her private parts." Jamie also told her mother that Dunlap told her that this was a secret just between the two of them and that she should not tell anyone about it.

¶ 5. At the time of the incident, Dunlap, a friend of Cox's from out of state, had been staying at Smith and Cox's home for two weeks. After Cox confronted Dunlap about Jamie's allegation, Dunlap moved out of Smith and Cox's house. Eight years later, Dunlap was arrested in California and returned to Wisconsin to be tried on the charge. At his arraignment, Dunlap pled not guilty.

¶ 6.    Prior to trial, Dunlap moved the court to permit an in camera inspection of Jamie's medical and therapy records. Dunlap argued that these records might contain exculpatory evidence. Supporting his claim, he referenced an interview the police conducted with Cox on March 10, 1998. In that interview, Cox stated that he had observed Jamie behave inappropriately for her age. Cox claimed, "She would rub up against people and when she sat on your lap she would rub against or move around on your private parts . . . ." Cox also stated that he had advised his son, Shawn, to stay clear of her. Additionally, Cox informed the officer that Jamie had made untrue allegations against him while she was in therapy, which she later recanted and revealed that she had invented because she was mad at Cox. After a hearing, the court granted the motion. Once it had reviewed Jamie's records, the court determined that they contained no exculpatory evidence.

¶ 7.    A three-day jury trial began. The State called Jamie, now fifteen years old, to testify about the incident. On the night of November 7, 1989, she remembered being dropped off at Smith and Cox's house while her mother attended a meeting. Smith left with Jamie's mother, and Jamie was left at the house with Dunlap and Shawn. Jamie claimed that the assault occurred after she went into Smith's bedroom to sleep. She said that a little while later Dunlap came into the bedroom. Jamie described what happened next:

> He laid down beside me, and he started to rub my back, and he started to move down lower, and . . . he touched my ass, and then moved to the front and touched my vagina.

She stated that Dunlap rubbed but did not penetrate her vagina with his finger and that he told her not to tell anyone about the incident or he would kill her parents. The incident stopped when her mother returned to the house. Jamie testified that on the way home from Smith and Cox's house she told her mother that "Charlie Dunlap sexually assaulted me." Two days later, she told her father about the incident.

¶ 8.   On cross-examination, defense counsel questioned Jamie about inconsistencies in the details of the testimony that she gave to social worker Theresa Hanson shortly after the incident compared to the statements she made eight years later at the preliminary hearing and at the trial. At the preliminary hearing, Jamie had testified that Shawn was not present at Smith and Cox's home on the night of the assault and that she was alone with Dunlap. This statement was inconsistent with the statement she made to Hanson in 1989 and with her testimony at trial. Defense counsel also pointed out that in 1989 Jamie stated that Dunlap did not penetrate her vagina with his finger, but at the preliminary hearing she claimed that he did. When asked on cross-examination which statement was true, Jamie replied that Dunlap did insert his finger into her vagina. Jamie was asked about another discrepancy in her testimonies. In 1989, she claimed that Dunlap told her never to tell anyone about the incident but did not say what would happen to her if she did. At the preliminary hearing and at the trial, Jamie averred that Dunlap threatened to kill her parents if she revealed what had happened.

¶ 9.   In attempting to explain the inconsistencies in Jamie's testimony, the State called Hanson as an expert witness on child sexual assault victims. Hanson informed the court that six-year-old children do not

usually have a concept of "in and out" in reference to something being inserted into their genitalia. This concept is better understood once a child reaches puberty. She further testified that based on her twenty-four years of experience, six-year-old children often do not reveal the complete story to her the first time they meet with her. She stated that it is not uncommon for children to focus only on the central activity that happened to them rather than on the details of the peripheral information. She said that Jamie's disclosure of the alleged assault was consistent with child sexual assault victims because it occurred away from the scene of the assault and because she revealed the information to someone whom she trusted.

¶ 10.   During defense counsel's cross-examination of Hanson, counsel attempted to ask her whether a six-year-old child with detailed sexual knowledge was consistent with the child being a victim of sexual assault. The prosecutor objected to the question's relevancy. The court held a sidebar discussion, where the prosecutor explained that defense counsel's line of questioning was impermissible due to the rape shield law's prohibition on questioning about the victim's sexual conduct. Such evidence may only be admissible through a pretrial motion in limine, he argued. Defense counsel countered that the State had opened the door by questioning Hanson about whether Jamie's behavior was consistent with a child sexual assault victim. He continued arguing that he should be able to introduce evidence that suggested Jamie may have also exhibited such behavior prior to the incident with Dunlap. He sought to elicit Hanson's opinion with regard to a report she made in 1989. In this report, Hanson referred to a conversation with Smith in which Smith revealed to Hanson that she was very concerned about

Jamie because of Jamie's unusual behavior. Smith told Hanson that Jamie "touch[ed] men in the genital area," attempted to stimulate herself by writhing around on men's laps, "hump[ed] the family dog" and masturbated frequently. Smith said that she observed this behavior prior to Dunlap's alleged assault. Defense counsel argued that the evidence in Hanson's report was admissible because it was a report conducted in the regular course of business and the declarant, Smith, was now deceased. He asserted that it was imperative for the jury to be made aware that Jamie displayed conduct consistent with being a sexual assault victim before the incident with Dunlap happened. The court sustained the prosecution's objection.

¶ 11. The final witness to testify was Dunlap. He denied having any physical contact with Jamie. The jury returned a guilty verdict. Dunlap was sentenced to twenty years in prison.

¶ 12. Dunlap filed a motion for postconviction relief and requested a new trial. In the motion, he asserted, among other things, that Hanson should have been allowed to testify about the contents of her report and that his trial counsel was ineffective for failing to comply with the provisions of the rape shield law. In support of the motion, a report from Dr. Tom Daniels was submitted. Daniels, a psychologist, reviewed Hanson's 1989 report and Jamie's trial testimony. Using a rating scale, the Child Sexual Behavior Inventory, Daniels examined Jamie's unusual behaviors by analyzing the frequency of such behaviors occurring in abused and nonabused children according to the rating scale. Because each of the unusual behaviors Jamie exhibited was significantly more common in an abused child of her age, Daniels concluded that this fact "strongly suggests that she has been exposed to

inappropriate sexual material or experiences." The circuit court denied the postconviction motion. Dunlap appeals.

## DISCUSSION

¶ 13.   Dunlap argues that the circuit court's evidentiary decision precluding him from cross-examining Hanson about Jamie's sexual behavior was in error. The basis for the testimony defense counsel sought from Hanson was found in her 1989 report in which she related information given to her by Smith about Jamie's conduct prior to the assault. Dunlap argues that because Hanson testified that, in her professional opinion, Jamie's behavior was consistent with child sexual assault victims, the door was opened on cross-examination for opinion testimony regarding whether Jamie exhibited behavior consistent with being a child sexual assault victim prior to the incident with Dunlap.

¶ 14.   The State disagrees and construes Hanson's testimony as not opening the door to questioning about Jamie's prior sexual behavior. It also contends that the information contained in the 1989 report was inadmissible as hearsay and barred by the rape shield law.

¶ 15.   The right to present a defense through the testimony of favorable witnesses and the effective cross-examination of adverse witnesses is grounded in the Confrontation and Compulsory Process Clauses of the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution.[2] *See State v. Pulizzano*, 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990). The primary objective of

---

[2] The Sixth Amendment to the United States Constitution requires in pertinent part:

the Confrontation Clause is to promote the reliability of the evidence against a criminal defendant by rigorously testing it in an adversarial proceeding before a jury. *See Maryland v. Craig*, 497 U.S. 836, 845 (1990). To accomplish this objective, the defendant must have the opportunity to meaningfully cross-examine witnesses. *See State v. Thomas*, 144 Wis. 2d 876, 893, 425 N.W.2d 641 (1988).

¶ 16.  A defendant's right to present a defense may in some cases require the admission of testimony that would otherwise be excluded under applicable evidentiary rules. *See Pulizzano*, 155 Wis. 2d at 648; *see also State v. Jackson*, 216 Wis. 2d 646, 663, 575 N.W.2d 475 (1998). The right to present a defense is not absolute, but rather is limited to the presentation of relevant evidence whose probative value is not substantially outweighed by its potential prejudicial effect. *See Pulizzano*, 155 Wis. 2d at 646.

¶ 17.  The admission of evidence is a decision left to the discretion of the circuit court. *See Michael R. B. v. State*, 175 Wis. 2d 713, 723, 499 N.W.2d 641 (1993). We will not find an erroneous exercise of discretion where the circuit court applies the facts of record to accepted legal standards. *See State v. Kuntz*, 160 Wis. 2d 722, 745, 467 N.W.2d 531 (1991). However, a determination of whether the circuit court's actions violate the defendant's constitutional rights to confrontation

In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor . . . .

Article I, section 7 of the Wisconsin Constitution states in pertinent part:

In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf . . . .

and to present a defense is a question of constitutional fact. *See State v. Heft,* 185 Wis. 2d 288, 296, 517 N.W.2d 494 (1994). For purposes of reviewing a question of constitutional fact, we adopt the circuit court's findings of fact unless clearly erroneous, but independently apply those facts to the constitutional standard. *See State v. McMorris,* 213 Wis. 2d 156, 165, 570 N.W.2d 384 (1997).

¶ 18. While cross-examining Jamie at trial, defense counsel demonstrated that there were numerous discrepancies between her prior statements in 1989 and her testimonies at the preliminary hearing and on direct examination. In an effort to rebut inferences that might diminish the veracity of Jamie's testimony, the State called an expert witness, Hanson, to testify about the common behaviors of child sexual assault victims. On the basis of her education and experience, Hanson testified on direct examination that Jamie behaved consistently with someone who was a six-year-old sexual assault victim in the following ways: she was unable to understand the concept of something being put into the vagina; she was unable to relay all of the information and details of the assault when first questioned about them; and she divulged to a trusted person that she had been assaulted. During cross-examination of Hanson, defense counsel sought to elicit opinion testimony as to whether there were examples of behavior on Jamie's part that occurred before Dunlap's alleged assault but were nonetheless consistent with behavior of child sexual assault victims. The court precluded defense counsel from doing so. We determine that this decision was in error.

¶ 19. We conclude that the State opened the door for Dunlap to cross-examine the expert witness about examples of Jamie's behavior occurring prior to Dun-

lap's alleged assault that were consistent with behavior of child sexual assault victims. Having offered the expert's conclusions to explain that the discrepancies in Jamie's testimony were not uncommon for child sexual assault victims, the State created an opportunity for Dunlap to explore other behavior Jamie exhibited that is common for child sexual assault victims. *See State v. Wulff*, 200 Wis. 2d 318, 344, 546 N.W.2d 522 (Ct. App. 1996) (holding that defendant's trial tactics "opened the door" to prosecution's use of evidence), *rev'd on other grounds*, 207 Wis. 2d 143, 144–45, 557 N.W.2d 813 (1997). *See also State v. Jackson*, 212 Wis. 2d 203, 224, 567 N.W.2d 920 (Ct. App. 1997) (Brown, J., dissenting), *rev'd*, 216 Wis. 2d 646, 575 N.W.2d 475 (1998) (doctrine of curative admission is premised on a basic notion of "fair play"). This was a trial and conviction with no physical evidence. The State's evidence against Dunlap was Jamie's testimony about an incident that occurred eight years earlier. Jamie testified that Dunlap sexually assaulted her. Dunlap testified that he never physically touched Jamie. The determining factor of this case was which party the jury believed was telling the truth. The expert's conclusions bolstered Jamie's testimony, and because Dunlap was denied the opportunity to fully cross-examine the expert about her conclusions, he was denied the right to properly defend himself.

¶ 20. The State contends that Dunlap's cross-examination of Hanson was correctly precluded because it would have been based on inadmissible hearsay evidence—Hanson's 1989 report—and was barred by the rape shield law. We first respond to the State's hearsay claim.

¶ 21. Hanson's 1989 report contained a detailed statement from Smith reporting Smith's concern with

Jamie's unusual conduct. Smith died prior to the trial and her statement is classic hearsay. *See* WIS. STAT. § 908.04(1)(d). Dunlap argues that Smith's statements in Hanson's reports were admissible under the business records exception to the hearsay rule, *see* WIS. STAT. § 908.03(6); as a statement of recent perception, *see* WIS. STAT. § 908.045(2); or, under the residual exception to the hearsay rule, *see* § 908.045(6). The State counters that Smith's statement to Hanson was barred by the rule against hearsay, Smith's statement was a second level of hearsay, and a recognized hearsay exception must be found before it can be admitted. The State relies upon *Mitchell v. State*, 84 Wis. 2d 325, 267 N.W.2d 349 (1978), and *State v. Gilles*, 173 Wis. 2d 101, 496 N.W.2d 133 (Ct. App. 1992), to support this argument.

¶ 22. Although it is clearly established that expert witnesses are permitted to base their opinions on hearsay evidence, *see* WIS. STAT. § 907.03, *State v. Watson*, 227 Wis. 2d 167, 198, 595 N.W.2d 403 (1999), cautions that "Wisconsin Stat. § 907.03 is not a hearsay exception." *Watson* teaches that the data upon which the expert's opinion is based cannot be automatically admitted into evidence for the truth of the matter being asserted unless it is admissible under a recognized exception to the hearsay rule. *See Watson*, 227 Wis. 2d at 198–99. However, *Watson* recognizes that the trial court "must be given latitude to determine when the underlying hearsay may be permitted to reach the trier of fact through examination of the expert—with cautioning instructions for the trier of fact to head off misunderstanding—and when it must be rigorously excluded altogether." *Id.* at 200–01.

¶ 23. *Watson* reminds us that these principles are "especially critical in criminal proceedings . . .

where a person's statutory or constitutional rights must be vindicated." *Id.* at 201. "An essential ingredient of due process is the right to defend against the State's accusations." *State v. Tabor*, 191 Wis. 2d 482, 496, 529 N.W.2d 915 (Ct. App. 1995).

¶ 24. Although Smith's statement to Hanson is classic hearsay, due process and "fair play" require the admission of the statement about Jamie's unusual behavior observed by Smith before the alleged sexual assault. This is not the type of statement meant to be rigorously excluded by the hearsay rule. "The hearsay rule is designed to reject untrustworthy utterances." *State v. Alles*, 106 Wis. 2d 368, 379 n.3, 316 N.W.2d 378 (1982). There is some assurance that Smith's statement is trustworthy. Her statement in Hanson's report would have been corroborated by the testimony of Cox, Smith's live-in companion in 1989. In a postconviction offer of proof, Dunlap submitted a police report containing a statement from Cox that "he felt her [Jamie's] behavior was very inappropriate for her age. She would rub up against people and when she sat on your lap she would rub up against or move around on your private parts, like she had been watching movies." Further, "he . . . thought there was something not right with [Jamie]." In addition, a cautionary instruction could have been crafted that would have prevented the jury from misunderstanding the purpose of the admission of the hearsay evidence. *See Pulizzano*, 155 Wis. 2d at 652–53 (a limiting instruction can negate the potential prejudicial effect of evidence).

¶ 25. The State also argues that the cross-examination testimony was prohibited by the rape shield law, *see* WIS. STAT. § 972.11.[3] Section 972.11(2)(b) pre-

---

[3] WISCONSIN STAT. § 972.11 provides in part:

cludes the admission of evidence regarding a complainant's prior sexual conduct or behavior absent the application of a statutory or judicially created exception. *See Pulizzano,* 155 Wis. 2d at 647–48. A pretrial motion is required to determine if the proffered evidence satisfies one of the exceptions. *See* WIS. STAT. § 971.31(11).[4]

**Evidence and practice; civil rules applicable. (1)** Except as provided in subs. (2) to (5), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction. No guardian ad litem need be appointed for a defendant in a criminal action. Chapters 885 to 895, except ss. 804.02 to 804.07 and 887.23 to 887.26, shall apply in all criminal proceedings.

(2)(a)  In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

(b)  If the defendant is accused of a crime under s. 940.225, 948.02, 948.025, 948.05, 948.06 or 948.095, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1.  Evidence of the complaining witness's past conduct with the defendant.

2.  Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3.  Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

(c)  Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1., 2. or 3.

[4] WISCONSIN STAT. § 971.31(11) provides:

¶ 26.    Dunlap concedes that he did not pursue a pretrial motion on the admissibility of Smith's statement. This failure is not fatal because the evidence of Jamie's unusual preassault behavior did not become significant until the State called Hanson on rebuttal to establish the inference that Jamie's postassault behavior was not inconsistent with the behavior of a child sexual assault victim. Dunlap would not have known the value of this evidence pretrial and cannot have been expected to file a pretrial motion. In seeking the admission of Smith's statement, Dunlap properly made an offer of proof after the State objected to his attempt to elicit the statement from Hanson on cross-examination. *Cf. Pulizzano*, 155 Wis. 2d at 648–49 (an offer of proof is the proper means to establish that the evidence sought to be admitted was within the defendant's constitutionally protected rights of confrontation and compulsory process):

> [Defense Counsel]:    But that's still not the point, Your Honor. The point is the jury should not be left with the impression that the reason she [Jamie] displayed behaviors consistent with sexual assault victims is because this defendant is the one who sexually assaulted her if there is evidence to the contrary, and I believe there is evidence to the contrary, and I believe that they have a right to know that based on opening the door and asking these questions.
>
> I'll tell you exactly what I'm getting at, and that is Theresa Hanson made a report back in 1989, and in that report she stated that Susan Smith stated

In actions under s. 940.225, 948.02, 948.025 or 948.095, evidence which is admissible under s. 972.11 (2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial.

that she had been very concerned about Jamie, wished to share with this agency the fact [that] the child has been involved in a great deal of seductive behavior, she's had to restrict her from being anywhere near her son, that Jamie would touch men in the genital area, would sit on their laps, attempt to stimulate themselves [sic] in a rocking manner. She stated there were times when they would observe Jamie actually humping the family dog. She has also observed Jamie masturbating a great deal. This was also prior to the sexual abuse by Charlie Dunlap.

Now, this witness knows that there were prior indications of prior sexual assault, and yet the questions that are being asked of her are being asked in such a manner [that] they leave the jury to believe all of these behaviors are attributable to this particular incident which is being alleged. And for them not to know that there was a report that she exhibited behaviors prior to this which would account for her having behaviors consistent with child sexual assault victims is not proper for the jury to be able to draw that conclusion and not have the whole picture.

¶ 27.　For Dunlap's offer of proof to be effective, it must satisfy the five-part *Pulizzano* test: "(1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect." *Id.* at 656.

¶ 28.　Before turning to the *Pulizzano* test, we will consider whether the offer of proof was adequate. An offer of proof has two purposes: "first, provide the circuit court a more adequate basis for an evidentiary

ruling and second, establish a meaningful record for appellate review." *State v. Dodson,* 219 Wis. 2d 65, 73, 580 N.W.2d 181 (1998). "The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." *Milenkovic v. State,* 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978). Dunlap's offer of proof passes muster.

¶ 29. We conclude that the *Pulizzano* test is fulfilled. First, there is no dispute that the unusual behavior occurred prior to the alleged assault; it was witnessed by Smith and Cox. Second, the State asked Hanson about certain behavior, abnormal for most six-year-old children, exhibited by Jamie after the alleged assault; the unusual behavior Dunlap wanted to question Hanson about is certainly abnormal behavior for a six-year-old child. Third, Dunlap's expert psychologist, referring to the Child Sexual Behavior Inventory, concluded that Jamie's unusual behavior strongly suggested that she had been exposed to inappropriate material or experiences. The expert's conclusion makes the unusual behavior relevant to material issues—Jamie's credibility and the cause of her unusual behavior. Fourth, the State introduced Hanson's testimony to rehabilitate Jamie by establishing that child victims of sexual assault may exhibit abnormal behavior. Dunlap required this evidence to let the jury know that six-year-old children can exhibit other forms of unusual behavior as the result of a sexual assault and Jamie exhibited some of those forms before the alleged assault. Finally, the evidence is likely prejudicial because the jury could use it for other purposes; a

cautionary instruction would go a long way to prevent the jury from going astray.

¶ 30. It is not enough for the evidence to pass muster under the five-part *Pulizzano* test. We are also required to consider whether the State's interest in prohibiting the evidence requires that it be excluded. *See Pulizzano*, 155 Wis. 2d at 653. We conclude that Dunlap's constitutional right to present the evidence outweighs the State's interest. The alleged assault occurred in 1989 when Jamie was only six years old. Because the trial took place eight years later, there was no physical evidence and there had been no eyewitnesses. The trial became a credibility battle between Jamie and Dunlap. Hanson's testimony created the inference that Jamie would not have exhibited certain abnormal behavior unless she had been sexually assaulted. Evidence that Jamie exhibited abnormal behavior before the alleged assault and that such behavior is also associated with child victims of sexual assault constituted a significant element of Dunlap's defense. For these reasons, under the circumstances of this case, Dunlap's right to present the evidence overrides the State's interest.

¶ 31. The harmless error test does not apply because it is subsumed by our conclusions that the exclusion of the evidence deprived Dunlap of a significant and necessary element of his defense. Therefore, we reverse Dunlap's conviction and remand for a new trial.

¶ 32. Before concluding this opinion, we choose to address another argument of Dunlap's because the issue will likely recur at the new trial. This contention concerns evidence presented by the State about Jamie's nightmares. A circuit court's decision about whether to admit evidence is discretionary. *See*

*Michael R. B.*, 175 Wis. 2d at 723. We will not overturn the court's decision unless it erroneously exercised its discretion by incorrectly applying the facts to accepted legal standards. *See Kuntz*, 160 Wis. 2d at 745.

¶ 33. Jamie's father testified about the content of her nightmares based on information he received from his daughter. He claimed that Jamie's nightmares were about Dunlap returning to her home and killing her parents. Dunlap contested the admission of this evidence, claiming that it was hearsay. The circuit court disagreed, concluding that the evidence was not hearsay because it was not offered to prove the truth of the matter. The court determined that the evidence was admissible because it showed that Jamie's postassault behavior was consistent with being a child sexual assault victim. On appeal, Dunlap posits that the evidence's admission was an erroneous exercise of discretion because it is hearsay, irrelevant and prejudicial.

¶ 34. We do not find Dunlap's hearsay argument persuasive. Although we do agree that the nightmare evidence was in fact hearsay, it falls into the category of mental and emotional condition evidence, admissible as an exception to the hearsay rule pursuant to WIS. STAT. § 908.03(3). Admitting this evidence, therefore, was not in error.

¶ 35. Finally, we also find this evidence to be relevant. The testimony of Jamie's father regarding her nightmares showed that his daughter was afraid of Dunlap and also supported her testimony that Dunlap threatened to kill her parents if she revealed to anyone that the sexual assault had occurred. In sum, the nightmare evidence was properly admitted at trial.

## CONCLUSION

¶ 36.    We conclude that the circuit court erred in denying Dunlap the opportunity to introduce evidence that Jamie exhibited unusual behavior before the alleged sexual assault and that he is entitled to a new trial. First, the State opened the door to the evidence by asking Hanson about abnormal behavior Jamie exhibited after the alleged sexual assault. Second, although the evidence is hearsay, it has some indication of trustworthiness and the circuit court should have admitted the evidence along with giving the jury a cautionary instruction. Third, the evidence meets the five-part *Pulizzano* test; therefore, Dunlap had a constitutional right to present the evidence. Finally, the evidence could have been a significant element of Dunlap's defense and this prevails over the State's interest in excluding the evidence.

*By the Court.*—Judgment and order reversed and cause remanded with directions.