STATE of Wisconsin, Plaintiff-Respondent,

v.

James D. MILLER, Defendant-Appellant.†

Court of Appeals

*No. 01–1406–CR. Submitted on briefs May 9, 2002.—Decided July 3, 2002.*

2002 WI App 197

(Also reported in 650 N.W.2d 850.)

† Petition to review denied 9-26-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig M. Kuhary* of *Huppertz & Kuhary, S.C.* of Waukesha, and *Daniel P. Fay* of *Oakton Avenue Law Offices, S.C.* of Pewaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sandra L. Nowack,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. James D. Miller appeals from a judgment of conviction for sexual exploitation by a therapist contrary to Wis. Stat. § 940.22(2) (1999–2000),[1] and first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1). The respective offenses occurred during Miller's treatment of two patients, J.B. and S.W., when Miller was a practicing psychologist.

¶ 2. Miller's conviction for sexual exploitation by a therapist concerns his treatment of J.B. Miller challenges this conviction on statute of limitations grounds based on the fact that a portion of the four-year charging period fell outside the six-year statute of limitations. Wis. Stat. § 939.74(1). Miller also contends that the broad charging period is unconstitutionally duplicitous and vague. We reject these arguments and affirm the conviction.

¶ 3. As to the conviction for sexual assault against S.W., Miller argues that he was deprived of his right to present a defense when the trial court barred the proffered testimony of a deputy district attorney as

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

irrelevant and collateral. We uphold this discretionary ruling and affirm the conviction.

¶ 4. We will set out the relevant procedural and historical facts as we discuss each of Miller's convictions.

## DISCUSSION

### *Sexual Exploitation by a Therapist,*
### *WIS. STAT. § 940.22*[2]

¶ 5. On July 29, 1998, the State filed a criminal complaint alleging that Miller, in his role as a therapist, had sexually exploited J.B. between approximately March 1, 1989, and March 31, 1993, a period of time when J.B. was thirteen to seventeen years of age. The complaint alleged that during this period of time, Miller had engaged in various instances of fondling and touching J.B.'s genitals or placing J.B. in contact with Miller's penis. The complaint additionally alleged that prior to J.B.'s reporting of these events in November 1997, J.B. was unable to seek the issuance of a criminal complaint due to the effects of the sexual contact or due to any threats, instructions, or statements from the therapist pursuant to WIS. STAT. § 939.74(4).[3]

---

[2] WISCONSIN STAT. § 940.22 provides, in relevant part:

> (2) SEXUAL CONTACT PROHIBITED. Any person who is or who holds himself or herself out to be a therapist and who intentionally has sexual contact with a patient or client during any ongoing therapist-patient or therapist-client relationship, regardless of whether it occurs during any treatment, consultation, interview or examination, is guilty of a Class C felony. Consent is not an issue in an action under this subsection.

[3] WISCONSIN STAT. § 939.74(1) provides that prosecution for a felony must be commenced within six years. How-

¶ 6. Miller responded with a motion to dismiss, alleging that the sexual exploitation charge was barred by the six-year statute of limitations set out in Wis. Stat. § 939.74(1). By a further motion, Miller also sought dismissal on grounds of duplicity in that the complaint alleged that he had engaged in many different acts against J.B. over a period of four years.

¶ 7. Following a hearing and briefing, the trial court denied Miller's motions. The court determined that the statute of limitations for the sexual exploitation charge "began to run when the crime ended ... March 31, 1993." Therefore, the complaint fell within the statute of limitations. With respect to duplicity, the court determined that the sexual exploitation statute, Wis. Stat. § 940.22, and the ongoing nature of a therapist-patient relationship permitted the prosecution to "charge one continuous offense."[4]

¶ 8. Prior to the preliminary hearing, Miller again filed a motion to dismiss the sexual exploitation charge, arguing that the charging period was vague and overbroad. The trial court denied this motion. Following the preliminary hearing, Miller was bound over for trial and he pled not guilty to the same charges now set out in the information. At this plea hearing, the court amplified and confirmed its denial of Miller's motion to dismiss by addressing the factors set out in *State v. Fawcett*, 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988).

---

ever, § 939.74(4) provides: "In computing the time limited by this section, the time during which an alleged victim under s. 940.22(2) is unable to seek the issuance of a complaint under s. 968.02 due to the effects of the sexual contact or due to any threats, instructions or statements from the therapist shall not be included."

[4] Miller petitioned this court for leave to appeal the trial court's nonfinal order denying his motions to dismiss. We denied Miller's request in an order issued on January 6, 1999.

¶ 9. Pre-trial, Miller filed motions requesting the State to make a more definite and certain statement with respect to the sexual exploitation allegations and asking the trial court to reconsider its denial of the motion to dismiss the sexual exploitation charge. Specifically, Miller argued that the statute of limitations barred any prosecution for acts that occurred prior to July 27, 1992. The State responded that the tolling provision of Wis. Stat. § 939.74(4) applied because of J.B.'s inability to report the allegation due to the effects of the assault. The trial court agreed with the State. During the course of its oral ruling, the court held that Wis. Stat. §§ 939.74 and 940.22 "recognize the possibility of an essentially continuous crime with acts occurring during the therapy process and during the relationship . . . . [T]his offense qualifies in my mind as an offense that, while it straddles the statute of limitations, does not do it in an improper way." The court also denied Miller's motion for more definite and certain allegations as to the sexual exploitation charge.

¶ 10. At the conclusion of the nine-day jury trial, the trial court revisited the statute of limitations aspects of this case when considering the form of the verdict. The court framed a special verdict that broke out the charging period alleged in the information into two periods of time: the period outside the statute of limitations and the period within the statute of limitations. The special verdict asked separate questions as to Miller's guilt or innocence regarding each of these time periods. If the jury found Miller guilty regarding the period of time outside the statute of limitations, the special verdict asked the following further question concerning the tolling provisions of Wis. Stat. § 939.74(4):

> If you answered the above question "Guilty," answer the following question:

A. Was [J.B.] unable to seek issuance of a complaint due to the effects of the sexual contact or due to any statements or instructions by James D. Miller?

¶ 11. We also take note of certain jury instructions delivered by the trial court. Although the criminal complaint alleged a variety of acts involving sexual contact between Miller and J.B., the trial court instructed the jury that "[s]exual contact is an intentional touching by the defendant of the penis of [J.B.]."

> The defendant is charged with one count of sexual exploitation by a therapist; however, there has been introduction of more than one act, any one of which may constitute sexual exploitation. *Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that act constituted the crime charged.* (Emphasis added.)

¶ 12. The jury found Miller guilty for the period of time outside the statute of limitations and not guilty for the period of time within the statute of limitations. Thus, the jury was required to answer the further question concerning the tolling of the statute. As to that question, the jury found that J.B. was unable to seek the issuance of a complaint during this time period. Miller appeals.

### 1. Statute of Limitations

¶ 13. Part of Miller's statute of limitations challenge rests on the trial court's statement that sexual exploitation by a therapist under WIS. STAT. § 940.22 is a continuing offense. "[A] continuing offense is one which consists of a course of conduct enduring over an extended period of time." *State v. Ramirez*, 2001 WI App

158, ¶ 9, 246 Wis. 2d 802, 633 N.W.2d 656 (citation omitted), *review denied,* 2001 WI 114, 246 Wis. 2d 176, 634 N.W.2d 321 (Wis. Aug. 27, 2001) (No. 00–2605–CR). Whether a particular criminal offense is continuing in nature is significant to the application of the statute of limitations because the statute of limitations for a continuing offense does not run until the last act is done which, viewed alone, is a crime. *John v. State,* 96 Wis. 2d 183, 188, 291 N.W.2d 502 (1980). Otherwise, the State must commence prosecution for a felony offense within six years. Wis. Stat. § 939.74(1).

¶ 14. The trial court's observation that Wis. Stat. § 940.22 is a continuing offense statute may well be correct. However, we are not required to pass upon that question because the trial court's instructions to the jury eliminated any potential "continuing offense" issues from the case. As we have noted, the court instructed the jury that it had to unanimously agree that Miller "committed the same act and that act constituted the crime charged." While the jury heard evidence about various forms of sexual contact between Miller and J.B. during their ongoing therapist-patient relationship, the jury nonetheless was cautioned that it had to unanimously agree upon the same act of Miller touching J.B.'s penis before it could return a verdict of guilty. Thus, Miller's conviction was not premised upon the application of § 940.22 as a continuing offense. We therefore move to the other statute of limitations challenge raised by Miller.

¶ 15. The jury found Miller guilty of having sexual contact with J.B. during the period outside the statute of limitations. However, the jury also found that J.B. was unable to seek the issuance of a complaint due to the effects of the sexual contact or due to the

statements or instructions of Miller. This served to toll the statute of limitations pursuant to WIS. STAT. § 939.74(4). Miller argues that the verdict was improperly drafted because it failed to establish: (1) when the offense was committed; and (2) that J.B. was unable to report the incident prior to July 28, 1992. In addition, Miller challenges the sufficiency of the evidence regarding the jury's finding that J.B. was unable to report the incident during the period of time outside the statute of limitations.

¶ 16. The form of a special verdict is within the sound discretion of the trial court. *A.E. v. State*, 163 Wis. 2d 270, 276, 471 N.W.2d 519 (Ct. App. 1991). We will not interfere with the form of a special verdict unless the question, taken with the applicable instruction, does not fairly present the material issues of fact to the jury for determination. *Id.* We look to see if, in combination with the jury instructions, the jury questions presented the material issues of ultimate fact to the jury for its determination. Furthermore, a jury verdict will be sustained if there is any credible evidence to support it. *Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979).

¶ 17. Here, the jury was instructed to agree upon a specific act committed within a specific time period. Miller contends that the verdict form should have required the jury to nail down when the agreed-upon offense was committed. However, where the date of the commission of the crime is not a material element of the offense charged, it need not be precisely alleged or determined. *See Fawcett*, 145 Wis. 2d at 250. "Time is not of the essence in sexual assault cases, and the pertinent statute [here, WIS. STAT. § 940.22], does not

require proof of an exact date." *Id.* (citation omitted).[5] The jury unanimously found that the agreed-upon offense occurred between March 1, 1989, and November 28, 1992. We conclude that the verdict form adequately established a time period during which the specific offense was committed.

■

¶ 18. Next, Miller argues that the verdict was deficient because it did not require the jury to establish the time period during which J.B. was unable to report the sexual contact. We reject Miller's argument. Having found Miller guilty of sexual exploitation for the period of time outside the statute of limitations, March 1, 1989, to November 28, 1992, the jury was next required to answer whether J.B. was unable to seek issuance of a complaint due to the effects of the sexual contact or as the result of any statements or instructions by Miller. This further question was inextricably linked to the threshold question which inquired as to Miller's guilt or innocence and which designated the relevant period of time. It logically follows, therefore, that the jury found J.B. unable to report during that period of time—March 1, 1989, to November 28, 1992. The form of the verdict, coupled with the trial court's instructions, properly posed this question of ultimate fact to the jury.[6] *A.E. v. State*, 163 Wis. 2d at 276.

---

[5] There are three elements to the offense of sexual exploitation by a therapist: (1) that the defendant was or held himself or herself out to be a therapist, (2) that the defendant had sexual contact with the victim, and (3) that the sexual contact occurred during an ongoing therapist-patient relationship. WIS JI—CRIMINAL 1248.

[6] Although we reject Miller's argument, we note that he had the opportunity in the trial court to clarify any ambiguity on this issue. During jury deliberations, the jury asked for clarification on the issue of the time period of J.B.'s inability to report.

¶ 19. Next, Miller challenges the sufficiency of the evidence regarding the jury's finding that J.B. was unable to report the sexual contact during the period of time outside the statute of limitations. We reject this argument based on the following testimony by J.B. Miller told him that what occurred during their treatment sessions was "private and that nobody else has to know anything . . . . [W]hat's in these walls stays in these walls." J.B. was ashamed and embarrassed about Miller's sexual contact with him: "By the time I realized what he was doing was wrong I was too embarrassed to say anything and afraid to say anything to confront him about it." As late as 1992, J.B. was still unable to report any wrongdoing because he was afraid and "mainly ashamed." J.B. was not able to tell anyone about Miller's contact with him until approximately 1996 or 1997.

¶ 20. The credibility of witnesses and the assignment of weight afforded to witness testimony are left to the province of the jury. *State v. O'Brien*, 223 Wis. 2d 303, 326, 588 N.W.2d 8 (1999). Here, the jury's verdict reflects that it found J.B.'s testimony credible. We uphold the jury's finding.[7]

---

Miller objected to any clarification but insisted that the jury be told to follow the instructions as given. The trial court granted Miller's request.

[7] We conclude this portion of our discussion with an observation regarding the unique verdict used by the trial court in this case. In the interests of accuracy and uniformity, the supreme court has encouraged the trial courts of this state to follow the pattern jury instructions and verdict forms adopted by the Uniform Jury Instructions Committee. *See State v. Kanzelberger*, 28 Wis. 2d 652, 659, 137 N.W.2d 419 (1965).

## 2. Duplicity

¶ 21. Miller argues that the sexual exploitation charge was unconstitutionally duplicitous and that our supreme court's holding in *State v. Lomagro*, 113 Wis. 2d 582, 335 N.W.2d 583 (1983), compels dismissal of the complaint because it "impermissibly lumped together various specific acts of alleged sexual conduct into a single count of alleged criminal behavior." The State argues, and we agree, that the form of the verdict, coupled with the jury instructions, sufficiently narrowed the charge against Miller to eliminate any risk of duplicity in the verdict.

¶ 22. "Duplicity is the joining in a single count of two or more separate offenses." *Id.* at 586. The purposes of the prohibition against duplicity are: (1) to provide the defendant with sufficient notice of the charge, (2) to protect the defendant against double jeopardy, (3) to avoid prejudice and confusion arising from evidentiary rulings during trial, (4) to assure that the defendant is appropriately sentenced for the crime charged, and (5) to guarantee jury unanimity. *Id.* at 586–87.

¶ 23. Miller complains that he was charged with "committing a multitude of sexual acts, *during a forty-nine month period of time,* approximately *six to nine years ago.*" While the State's discretion to charge a

However, sometimes these pattern materials will not sufficiently address the facts or issues presented by a particular case. This proved to be such a case. Recognizing the unique statute of limitations issue posed in this case, the trial court structured a verdict that properly anticipated and addressed that question. We commend the trial court for its creativity.

defendant's actions as one continuing offense is generally limited to those situations in which the separately chargeable offenses are committed by the same person at substantially the same time and relating to one continued transaction, "[u]ltimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment." *Id.* at 588. We conclude that Miller was not exposed to such inherent dangers in this case.

¶ 24. Miller frames his argument primarily in terms of sufficiency of notice of the charge. We will address this issue in our ensuing discussion regarding the vagueness of the charging period. Miller's remaining duplicity concerns address the possible lack of jury unanimity and the protection against double jeopardy.[8]

¶ 25. If this case had gone to the jury based on the complaint's allegations of various episodes of sexual contact between Miller and J.B., Miller's arguments might carry some merit. However, we have already noted that in instructing the jury, the trial court expressly limited the definition of sexual contact as "an intentional touching by the defendant of the penis of [J.B.]." Also as noted, the court additionally instructed the jury as follows: *"Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that act constituted the crime charged."* (Emphasis added.)

¶ 26. In *Lomagro*, the supreme court determined that multiple and different acts of sexual intercourse could be considered conceptually similar for purposes of

---

[8] Miller makes no argument that the language of the charge created prejudice or confusion arising from evidentiary rulings during the trial. *See State v. Lomagro*, 113 Wis. 2d 582, 586–87, 335 N.W.2d 583 (1983).

jury unanimity. *See id.* at 598. Here, the situation is far less aggravated in light of the trial court's instruction that required the jury to agree upon the same single act of Miller touching J.B.'s penis. *Lomagro* instructs that if a complaint is found to be duplicitous, "the state must then either elect the act upon which it will rely or separate the acts into separate counts." *Id.* at 589. The court's instructions achieved that very result in this case.

### 3. Vagueness of Charging Period

¶ 27. Miller argues that the charging period of March 1, 1989, to March 31, 1993, set forth in the complaint was too expansive to allow him to prepare an adequate defense. This argument also bears on Miller's duplicity claim that the complaint did not provide adequate notice of the charge—a matter we previously deferred to this portion of our discussion. These arguments raise issues of constitutional fact which we decide de novo. *Fawcett*, 145 Wis. 2d at 249.

¶ 28. We begin by rejecting the State's argument that Miller is judicially estopped from challenging the length of the charging period because he opposed the State's offer to amend the information to allege two narrower charging periods. Amending the information to allege two charges covering shorter time periods would have exposed Miller to the risk of multiple convictions. A defendant should not be held to risk that additional jeopardy in exchange for protection against an overly vague charging period.

¶ 29. Addressing the merits of Miller's vagueness challenge, we look to the broad test adopted by the

Wisconsin Supreme Court in *Holesome v. State*, 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968), which provides:

> In order to determine the sufficiency of the charge, two factors are considered. They are, whether the accusation is such that the defendant [can] determine whether it states an offense to which he [or she] is able to plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense.

The factors that assist in determining whether the *Holesome* test is satisfied are set forth in *Fawcett*:

> (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately; (4) the length of the alleged period of time in relation to the number of individual criminal acts alleged; (5) the passage of time between the alleged period for the crime and the defendant's arrest; (6) the duration between the date of the indictment and the alleged offense; and (7) the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

*Fawcett*, 145 Wis. 2d at 253. Applying the *Fawcett* factors in this case, we conclude that the charging period did not violate Miller's constitutional rights.

¶ 30. We address the first three *Fawcett* factors (the victim's age and intelligence, and the circumstances and nature of the offense) in a single discussion. J.B. was thirteen years old when the sexual contact began. The contact occurred during J.B.'s appointments in Miller's office when J.B. was alone with Miller. Miller cautioned J.B. that the treatment sessions were private, that "nobody else has to know anything" and "what's in

142

these walls stays in these walls." J.B. explained that he was ashamed and embarrassed by Miller's conduct.

¶ 31. In *Fawcett* we observed that "[c]hild molestation is not an offense which lends itself to immediate discovery. Revelation usually depends upon the ultimate willingness of the child to come forward." *Id.* at 254. The same can be said for sexual exploitation of a patient by a therapist. A meaningful treating relationship between a therapist and patient is built on confidence, trust and confidentiality. In such a relationship, the patient is extremely vulnerable. When the therapist sexually abuses that relationship, it is understandable that the patient might experience uncertainty, guilt, embarrassment or shame. As a result, the patient may delay in reporting the matter or may never report it. In this case, J.B. saw Miller numerous times in a treatment setting and indicated that he did not realize at first the sexual nature of Miller's contact with him. When J.B. realized the gravity of the situation, he found himself too embarrassed and ashamed to reveal it. Even assuming that J.B.'s age and intelligence rendered him able to report the incidents, the nature and circumstances surrounding the events represent the most compelling factor in explaining J.B.'s delay in reporting the matter.[9]

¶ 32. The fourth factor inquires as to the length of period charged and the number of alleged offenses. While the complaint alleged that the conduct covered a four-year period of time and J.B. testified that Miller

_____

[9] In addition to Miller's ongoing therapeutic relationship with J.B., we also note that Miller played a role in some important decision-making matters regarding J.B. For instance, Miller was involved in the decision to move J.B. into four years of special education classes and recommended that J.B. be hospitalized for psychiatric care.

had sexually contacted him approximately thirty to forty times, the actual opportunity for Miller to have engaged in the offending conduct was limited to the seventy-three sessions with J.B. beginning in March 1989. Moreover, the period of time covered by the jury's guilty verdict, March 1, 1989, to November 28, 1992, further reduced these opportunities to the thirty-four sessions occurring within that time frame.

¶ 33. Miller likens his case to *State v. R.A.R.*, 148 Wis. 2d 408, 435 N.W.2d 315 (Ct. App. 1988). There, the defendant was charged in 1987 with three counts of first-degree sexual assault and one count of second-degree sexual assault. The complaint alleged that the first and second charges occurred "during the spring of 1982," the third "during the summer of 1982" and the fourth "during the summer of 1983." *Id.* at 409. Applying the *Fawcett* factors, the court of appeals concluded that the charging periods set forth for each of the four counts were not sufficiently definite, and that R.A.R. was not adequately informed of the charges against him. *R.A.R.*, 148 Wis. 2d at 413.

¶ 34. This case is readily distinguished from *R.A.R.* First, unlike *R.A.R.*, which involved multiple charges, Miller was charged with but one offense of sexual exploitation regarding J.B. Second, despite the extended charging period, we have already noted that the opportunities for Miller to have engaged in sexual contact with J.B. were substantially narrowed by the exact dates of his sessions with J.B. J.B.'s appointments were generally one hour in length, leaving Miller to defend against a period equivalent to approximately three days in length considering the entire charging period and approximately a day and a half considering the period of time covered by the jury's guilty verdict. Under this closer scrutiny, we conclude that the charging in this case satisfied this factor under *Fawcett*.

¶ 35. The fifth and sixth factors address the passage of time between the alleged period for the crime and the defendant's arrest and the duration between the date of the indictment and the alleged offense. Although no case has said so, we think it evident that these factors address the problem of dimmed memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations. Here, Miller's last session with J.B. occurred in March 1993, and the complaint was not filed until July 1998—a delay of over five years. However, unlike defendants in most criminal cases, Miller had the benefit of his own notes and records documenting the dates of his treatment sessions with J.B. and the content of those sessions. We do not see any undue prejudice to Miller as a result of this delay.

¶ 36. Finally, the seventh factor addresses the ability of the complaining witness to particularize the date and time of the alleged transaction or offense. As stated above, Miller's conduct occurred during the course of J.B.'s treatment with him. Although J.B. was not able to provide specific dates and times, he described the sexual contact in detail and he testified that all of the sexual contact occurred only during scheduled appointments and did not commence until after he had been in treatment with Miller for approximately one year. Despite the delay, J.B.'s testimony was sufficient so as to enable Miller to adequately confront it and to prepare a defense.

¶ 37. In light of the *Fawcett* factors and the circumstances of this particular case, we hold that the allegations against Miller were sufficient to satisfy the *Holesome* test. The allegations of the complaint were such that Miller could determine that it stated an offense and to which he could prepare a defense.

145

*Holesome*, 40 Wis. 2d at 102. In addition, Miller's conviction in this case under these allegations bars any prosecution for the same offense. *Id*. The charging period was reasonable and served to adequately inform Miller of the charges as well as the underlying facts constituting the offense and the time frame in which the offense occurred. *See Fawcett*, 145 Wis. 2d 253.

### Sexual Assault: Exclusion of Testimony

¶ 38. In addition to the sexual exploitation involving J.B., the criminal complaint also alleged that on December 9, 1991, Miller had sexually assaulted S.W., a minor, who was another of Miller's patients. The complaint alleged that S.W. indicated to his mother that Miller "either squeezed or grabbed his buttocks and pulled on his penis." The complaint indicated that the alleged assault was investigated on December 10, 1991, at which time the City of Oconomowoc Police Department contacted both S.W. and his mother.[10]

¶ 39. Prior to trial, Miller filed a motion to compel discovery in which he made a demand for exculpatory evidence. Specifically, Miller alleged that the State possessed medical records for S.W. that contained exculpatory information indicating that S.W. had surgery on his genitals shortly before his meeting with Miller on December 9, 1991. Miller believed that the records would reflect that other medical professionals "pulled on [S.W.'s] penis" as part of his recuperative process, which would explain why S.W. stated that Miller "checked him out like one of the doctors who ha[d] examined him before."

---

[10] This matter was referred to the Waukesha County District Attorney's. However, the district attorney decided that there was insufficient evidence to bring charges at that time.

¶ 40. Miller's motion was based in part upon a March 1992 letter to the Oconomowoc police department from the Waukesha County District Attorney's office. The letter, written by Deputy District Attorney Stephen J. Centinario, Jr., detailed the reasons for the State's original decision not to file charges against Miller regarding S.W.'s allegations. In support of the decision, Centinario cited to a surgery that S.W. had on his scrotum and "recurrent problems with the length of [S.W.'s] foreskin." Miller argued that physical exams related to that problem which involved the pulling of S.W.'s foreskin would demonstrate why S.W. indicated that Miller had pulled on his penis. Miller additionally argued the significance of Centinario's statement that S.W.'s mother "seemed rather relieved [that he would not be filing a criminal complaint] which indicates that she herself was not entirely convinced that a sexual assault occurred."

¶ 41. The trial court granted Miller's discovery motion, ruling that Miller was entitled to any relevant medical records and the court would determine the relevance of the records by an in camera review. Following that review, the court released the relevant portions of S.W.'s medical records. These records indicated that S.W. had a circumcision on January 18, 1987, shortly after he was born and that he had a hernia and hydrocele repair on April 7, 1989, followed by a postoperative visit on April 12, 1989. Based upon a discussion with S.W.'s mother, the State maintained that the April 1989 procedure was the only surgery performed on S.W. and that the problems with his foreskin were not recurring but had resolved within a week of his birth.

¶ 42. At trial, S.W.'s mother testified regarding S.W.'s medical treatment as follows. S.W. had been circumcised when he was two days old and had his

foreskin checked at routine infant exams until he was two months old. S.W. did not have a recurrent problem with his foreskin or complications from a surgery to repair a hernia and hydrocele. S.W. had the hernia/hydrocele surgery on April 7, 1989, when he was approximately twenty-six months old, and that he had two to three follow-up visits as a result of the surgery. S.W.'s mother never left S.W. alone during medical appointments with the exception of the surgery and she had never observed a physician pull on S.W.'s penis. Finally, she denied having been relieved by Centinario's decision not to pursue criminal charges.

¶ 43. As rebuttal, Miller sought to present Centinario as a witness. The State objected and the trial court sustained the objection. The court ruled that Centinario's proffered testimony regarding S.W.'s recurrent problems had "minimal probative value" and was "outweighed by the confusion and the tangential nature of this particular conversation in terms of the overall picture." The jury found Miller guilty of first-degree sexual assault of S.W.

¶ 44. On appeal, Miller argues that the trial court erred by excluding the proffered testimony of Centinario as a rebuttal witness. As a result, Miller argues that he was denied a fair opportunity to present a defense. Generally, a trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and in accordance with the facts of record. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992). However, where the focus of the claim is on the constitutional right of a defendant to present a defense, the issue is one of constitutional fact. *State v.*

*Dunlap*, 2000 WI App 251, ¶ 17, 239 Wis. 2d 423, 620 N.W.2d 398 ("[A] determination of whether the circuit court's actions violate the defendant's constitutional rights to confrontation and to present a defense is a question of constitutional fact."), *rev'd on other grounds by State v. Dunlap*, 2002 WI 19, 250 Wis. 2d 466, 640 N.W.2d 112.

¶ 45. The right to present a defense through the testimony of a favorable witness and the effective cross-examination of adverse witnesses is grounded in the confrontation and compulsory process clauses of the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution. *State v. Pulizzano*, 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990). However, the right to present a defense is not absolute but is limited to the presentation of relevant evidence whose probative value is not substantially outweighed by its potential prejudicial effect. *Id*. at 646; *State v. St. George*, 2002 WI 50, ¶ 15, 252 Wis. 2d 499, 643 N.W.2d 777.

¶ 46. WISCONSIN STAT. § 904.01 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Here, the trial court found that any testimony by Centinario as to his conversation with S.W.'s mother or his impression as to her attitude at the time of their meeting was outweighed by "low relevance" and potential jury confusion as to Centinario's impressions. Specifically, the court noted that the medical records documenting S.W.'s foreskin problem following his circumcision and his later surgery were already available to provide a chronology of those problems.

██

¶ 47. We reject Miller's contention that Centinario's proffered testimony would have impeached the testimony of S.W.'s mother. While Centinario's letter indicates his understanding that S.W. had recurring problems with his foreskin, he does not indicate when the problems occurred. That S.W. had recurring problems does not refute the testimony that those recurring problems resolved shortly after S.W.'s birth. We uphold the trial court's discretionary ruling as to this portion of Centinario's proffered rebuttal testimony.[11]

██

¶ 48. Similarly, we do not see the relevance of Centinario's impression that S.W.'s mother seemed "rather relieved" by his decision not to pursue criminal charges against Miller in 1991. A parent may very much believe that his or her child has been sexually assaulted but may also prefer that the child not have to undergo the rigors of testifying. In short, the mother's reaction to Centinario's decision would not have contributed anything of significance to this case. To the contrary, such testimony may well have confused or diverted the jury from the core issue. We uphold the trial court's discretionary ruling excluding this portion of Centinario's proffered testimony.

¶ 49. We conclude that Miller was not denied his constitutional right to present a defense by the exclusion of Centinario's testimony.

---

[11] Adding weight to our decision is the availability of the medical records providing the chronology of S.W.'s medical problems involving both his foreskin and hernia/hydrocele surgery. These records were more informative regarding S.W.'s medical treatment than the impressions of Centinario, who is a lawyer, not a doctor.

## CONCLUSION

¶ 50. The trial court's jury instructions elimi-
nated any "continuing offense" issues in this case. The
form of the special verdict and the jury's answers,
supported by sufficient evidence, assured that there
was no statute of limitations violation in this case and
also eliminated any issues relating to possible duplicity
or vagueness. Finally, Miller was not denied his consti-
tutional right to present a defense when the trial court
denied his request to introduce irrelevant evidence
from the deputy district attorney.

¶ 51. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.