STATE of Wisconsin, Plaintiff-Appellant,

v.

Brian S. KEMPAINEN, Defendant-Respondent.†

Court of Appeals

*No. 2013AP1531–CR. Submitted on briefs February 27, 2014.
—Decided April 16, 2014.*

2014 WI App 53

(Also reported in 848 N.W.2d 320.)

† Petition for Review granted September 18, 2014.

177

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Sarah L. Burgundy*, assistant

attorney general, *Marguerite M. Moeller*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Melissa L. Mroczkowski* of *Kirk Obear, Attorney at Law*, Sheboygan.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. The State appeals from the circuit court's order dismissing on due process grounds two counts of sexual assault of a child against Brian Kempainen based on the court's determination that the charges do not provide him sufficient notice of when the alleged violations occurred. Because we conclude that the complaint does provide Kempainen sufficient notice, we reverse and remand for reinstatement of the complaint and information and for further proceedings.

## BACKGROUND

¶ 2. In December 2012, the State charged Kempainen with two counts of sexual assault of a child under thirteen years of age, based upon his former stepdaughter's (L.T.'s) October 2012 report to police that Kempainen had sexual contact with her "on or about August 1, 1997 to December 1, 1997," when she was eight years old, and "on or about March 1, 2001 to June 15, 2001," when she was eleven or twelve years old. In relevant part, the complaint states as follows.

¶ 3. In October 2012, L.T. reported to police that the first assault took place at the Sheboygan home in which she lived with Kempainen and occurred at the start of the school year when she entered second grade, which she recalled because it corresponded with when they moved to Sheboygan. In the middle of the night, when L.T. was sleeping on the couch in the living room,

Kempainen, smelling of alcohol, laid on the inside of the couch next to her with L.T. on the edge toward the floor. Kempainen began to rub L.T.'s vagina on the outside of her pajamas. He then put her hand down the front of his sweat pants and used it to massage his penis for approximately two minutes. L.T. was scared and nervous as Kempainen then performed oral sex on her for a lengthy period of time, including sticking his tongue inside her vagina. Kempainen passed out on the couch, and L.T. immediately went into the kitchen and cried, before going elsewhere in the house to sleep. Approximately one week later, Kempainen called L.T. down into the basement where he told her that he had been drunk, what he did was bad, he did not want L.T. to tell her mother, and he would get in trouble if she told her mother. He also told L.T., "I know you were bad."

¶ 4. L.T. reported that the second assault took place at the same residence, in her mother and Kempainen's bedroom in the attic, when "it was warm outside" and she was in the sixth grade. It was L.T.'s regular responsibility to wake Kempainen for work around 4:30 p.m. and she was lying sideways at the foot of the bed watching Disney while waiting to wake him. Kempainen awoke on his own and began rubbing L.T.'s back under her clothes before moving his hand to the front and feeling her breasts. L.T. immediately became afraid, left the bedroom, and went to the home of a friend, S.H., but did not tell S.H. what had happened.

¶ 5. L.T. reported that she did not immediately tell anyone about the incidents because she thought her mother would be angry with her and she was afraid of what her mother would do to Kempainen. When she was in eighth grade, however, she told a close friend, J.B., what had happened. The complaint also states that when asked why she was first reporting the incidents in

181

October 2012, many years after the alleged assaults, L.T. explained that months earlier she had begun crying when her first serious boyfriend performed oral sex on her. He asked her what was wrong, and she told him what Kempainen had done. The boyfriend encouraged L.T. to tell her mother and the police; however, she still did not do so because she was afraid of what her mother would think and do. After L.T. and her boyfriend had broken up, the boyfriend informed L.T.'s mother about the abuse, and L.T. thereafter directly told her mother what Kempainen had done. L.T.'s mother became very upset and confronted Kempainen, which led to her mother's arrest for disorderly conduct. L.T. reported the incident to police shortly thereafter.

¶ 6. A month after L.T.'s report, police spoke with J.B. and L.T.'s former boyfriend. J.B. stated that when L.T. was in eighth grade, he and L.T. were talking in class about being virgins and L.T. told him that she was either "raped" or "molested," recalling that she used one of those two words. J.B. stated that L.T. did not provide details regarding who had raped/molested her or exactly what had happened. L.T.'s former boyfriend confirmed the incident in which L.T. began crying when he was performing oral sex on her and, after he inquired, she told him her stepfather would often get drunk and when he did he would perform oral sex on her. The boyfriend reported that L.T. had told him she felt responsible for it and that she was concerned about what her mother would do if she found out. He further stated that while they dated, he continued encouraging L.T. to get help, and months after they broke up, he told L.T.'s mother about the alleged assaults.

¶ 7. Kempainen was charged with two counts of sexual assault of a child. Relying upon our decision in *State v. R.A.R.*, 148 Wis. 2d 408, 435 N.W.2d 315 (Ct.

App. 1988), he moved to dismiss the charges on the ground that they violated his due process rights by failing to provide him with adequate notice. Specifically, he argued that the four-month time span in count one and the three-and-one-half-month time span in count two were "too vague" and did not adequately inform him of the charges to allow him to prepare a defense. The circuit court agreed and dismissed the charges. The State appeals.

## DISCUSSION

██ ¶ 8. The State challenges the circuit court's dismissal of the charges, arguing that the complaint, including the specified time frames therein, provides Kempainen with the required constitutional notice. To satisfy a defendant's due process right to notice, as well as double jeopardy concerns, a charge must be pled so the defendant is able to plead and prepare a defense and so conviction or acquittal will bar another prosecution for the same offense. *Holesome v. State*, 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968). Whether a charge is sufficiently pled is a question of law we review de novo. *State v. Fawcett*, 145 Wis. 2d 244, 250, 426 N.W.2d 91 (Ct. App. 1988).

¶ 9. In *Fawcett*, a case in which the State charged the defendant with two counts of sexual assault of a ten-year-old boy occurring during a six-month period, *id.* at 248 & n.1, we correctly noted the problems which arise in many cases involving sexual assaults of children:

Sexual abuse and sexual assaults of children are difficult crimes to detect and prosecute. Often there are no witnesses except the victim. The child may have been

183

assaulted by a trusted relative or friend and not know who to turn to for assistance and consolation. The child may have been threatened and told not to tell anyone. Even absent a threat, the child might harbor a natural reluctance to reveal information regarding the assault. These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory.

*Id.* at 249 (citation omitted). Due to these concerns, we held that "young children cannot be held to an adult's ability to comprehend and recall dates and other specifics." *Id.* We further quoted approvingly our prior decision in *State v. Sirisun*, 90 Wis. 2d 58, 279 N.W.2d 484 (Ct. App. 1979), stating:

Some liberality must be permitted in this area because of the age of the prosecutrix. A person should not be able to escape punishment for such a . . . crime because he has chosen to take carnal knowledge of an infant too young to testify clearly as to the time and details of such . . . activity.

*Fawcett*, 145 Wis. 2d at 249–50 (quoting *Sirisun*, 90 Wis. 2d at 65–66 n.4).

¶ 10. We balanced the above considerations with our recognition that "no matter how abhorrent the conduct may be, a defendant's due process and sixth amendment rights to fair notice of the charges and fair opportunity to defend may not be ignored or trivialized." *Id.* at 250. Even with this recognition, however, we reiterated the principle that "where the date of the commission of the crime is not a material element of the offense charged, it need not be precisely alleged," *id.* (citing *State v. Hoffman*, 106 Wis. 2d 185, 198, 316 N.W.2d 143 (Ct. App. 1982)), and further noted that "[t]ime is not of the essence in sexual assault cases," *id.* (citation omitted). And finally, we held:

> In a case involving a child victim, . . . a more flexible application of notice requirements is required and permitted. The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance . . . . Such circumstances ought not prevent the prosecution of one alleged to have committed the act.

*Id.* at 254 (citations omitted).

■■

¶ 11. As noted, under our supreme court's test in *Holesome*, to satisfy due process and double jeopardy concerns, a charge must be pled so the defendant is able to plead and prepare a defense and so conviction or acquittal will bar another prosecution for the same offense. *Holesome*, 40 Wis. 2d at 102. As we stated in *Fawcett*, factors which

> assist us in determining whether the *Holesome* test is satisfied . . . include: (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately; (4) the length of the alleged period of time in relation to the number of individual criminal acts alleged; (5) the passage of time between the alleged period for the crime and the defendant's arrest; (6) the duration between the date of the indictment and the alleged offense; and (7) the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

*Fawcett*, 145 Wis. 2d at 253.

¶ 12. On appeal, Kempainen again relies on our decision in *R.A.R.*, decided shortly *after Fawcett*, in arguing that the first three *Fawcett* factors "*only* apply

when the defendant claims that the State could have obtained a more definite date through diligent efforts." (Emphasis added.) He argues that the circuit court correctly refused to apply the first three factors because Kempainen made no such claim and contends the court properly concluded under the last four factors that the charges against him were not sufficiently pled. After a thorough review of these and other decisions, we conclude that courts may consider all of the *Fawcett* factors in determining whether a charge is sufficiently pled and further conclude that the charges here are sufficiently pled.

¶ 13. Kempainen points out that we stated in *R.A.R.* that the first three *Fawcett* factors apply "when the defendant claims that the state could have obtained a more definite date through diligent efforts," and that we then declined to apply those factors in that case because the defendant had not made such a claim.[1] *R.A.R.*, 148 Wis. 2d at 411. However, in *Fawcett*, we stated that a court "*may* look to the [first three factors]" when evaluating whether the prosecution was diligent, and further, that when assessing the overall reasonableness of the complaint under *Holesome*, relevant factors "include *but are not limited to*" the last four factors. *See Fawcett*, 145 Wis. 2d at 251 n.2 (emphasis added). Significantly, we then concluded that *all seven factors* can "assist us in determining whether the *Holesome* test is satisfied" and proceeded to apply all seven factors. *Id.* at 253–54. We note that we did so even though nothing in the *Fawcett* decision indicates the defendant made a claim of lack of diligence by the prosecution. *See*

---

[1] We note that in most cases, including the one before us, where a defendant alleges that the time period for a charge is too broad, the consideration will inherently be before the court as to whether more specificity could have been alleged.

*Fawcett*, 145 Wis. 2d at 253–54; *see also State v. Miller*, 2002 WI App 197, ¶¶ 30–37, 257 Wis. 2d 124, 650 N.W.2d 850 (another child sexual assault case involving an extended charging period and delayed reporting in which we again applied all seven *Fawcett* factors despite the absence of any apparent claim of lack of prosecutorial diligence).

¶ 14. To the extent *R.A.R.* suggests courts may not consider the first three *Fawcett* factors unless a defendant claims a lack of prosecutorial diligence, we cannot follow it. Such a reading would conflict with our earlier holding in *Fawcett* and "only the supreme court . . . has the power to overrule, modify or withdraw language from a published opinion of the court of appeals." *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).[2] Thus, we must follow *Fawcett*.

¶ 15. The ultimate question is whether the *Holesome* test has been met. The seven *Fawcett* factors are tools to assist—not limitations upon—courts in answering this question. A court may consider all of these factors, and others, if it deems them helpful in deter-

---

[2] We also note that the court in *State v. R.A.R.*, 148 Wis. 2d 408, 435 N.W.2d 315 (Ct. App. 1988), offers no rationale for limiting the *Holesome* analysis to the last four factors absent a claimed lack of diligence. That the first three factors are relevant to determine diligence does not negate their relevance in determining whether the complaint provides sufficient notice. Furthermore, as the State points out, to read *R.A.R.* as Kempainen suggests would permit defendants in cases involving delayed reporting by a young child to "avoid the three factors most likely to weigh against [the defendant] by simply declining to allege a lack of diligence by the State." We do not read our decision in *State v. Fawcett*, 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988), as intending to give one party the ability to control a court's considerations regarding the sufficiency of a charge simply through strategic pleading.

mining whether the requirements of *Holesome* are satisfied.

¶ 16. We now consider the *Fawcett* factors as they relate to this case. As we did in *Miller*, we consider together the first three factors—the age and intelligence of the victim, the surrounding circumstances, and the nature of the offenses, including whether they were likely to occur at a specific time or were likely to have been discovered immediately. *See Miller*, 257 Wis. 2d 124, ¶ 30; *Fawcett*, 145 Wis. 2d at 251 n.2, 253. The dates set forth in the complaint allege that L.T. was eight and either eleven or twelve years old when the reported assaults occurred. Kempainen held a position of trust, dominance, and authority—he was L.T's stepfather who lived in the same house with her. He is alleged to have performed sexual acts on her, the nature of which would have highlighted to L.T. the position of dominance he held over her—that is, he could do essentially whatever he wanted to her. According to the complaint, during the first alleged assault, L.T. was scared and nervous, and when it was over and Kempainen had passed out, she went into the kitchen and cried, and then found another place to sleep. A week later, Kempainen summoned L.T. into the basement and told her she was "bad," she should not tell her mother, and he would get in trouble if she told her mother. While Kempainen asserts that the statements allegedly made by him "included no threat of force or violence," the alleged assault itself and these statements by the father figure in the home, if true, undoubtedly would have had a significant impact on eight-year-old L.T. With the second assault, L.T. again was afraid, even leaving the home to go to a friend's house.

¶ 17. The complaint explains that L.T. did not immediately tell anyone about the incidents because she thought her mother would be angry with her and she was afraid of what her mother would do to Kempainen—particularly understandable concerns in light of the allegations that Kempainen told L.T. she was "bad" and that he would get in trouble if she told her mother. According to the complaint, when L.T. was in the eighth grade she did disclose that she had been "raped" or "molested," but did so only to a trusted friend, another juvenile. Even when the issue resurfaced with her boyfriend after L.T. had become an adult, she refused to report the alleged assaults due to concerns about what her mother would think and do. The boyfriend reported that L.T. also told him she felt responsible. Only when he forced the issue by informing her mother in October 2012 did L.T. tell her mother what had happened and then shortly thereafter report the matter to police. The complaint further explains the reasonableness of L.T.'s concern about what her mother might do if she learned of the assaults in that it details that when L.T. finally told her mother what had happened, her mother became very upset and confronted Kempainen in a manner that led to her arrest for disorderly conduct.

¶ 18. L.T.'s age at the time of the alleged assaults and, as in *Miller*, the nature and circumstances surrounding the events, "represent the most compelling factor[s] in explaining [L.T.'s] delay in reporting." *See Miller*, 257 Wis. 2d 124, ¶¶ 30–31; *see also Fawcett*, 145 Wis. 2d at 254 (referring to the third factor, we observed that "child molestation is not an offense which lends itself to immediate discovery").

¶ 19. The fourth factor relates to the length of the time period charged in relation to the number of

189

assaults alleged. In *Fawcett*, we concluded the complaint was constitutionally sufficient where the defendant was charged with two counts of sexually assaulting the victim "during the six months preceding December A.D. 1985." *Id.* at 247. In response to the *Fawcett* defendant's specific complaint that it was virtually impossible to prepare an alibi defense for a six-month period, we stated that "an alibi defense does not change the nature of the charges against the defendant or suddenly incorporate time as a necessary element of the offense. As we have already noted, a certain leeway is necessary in this area." *Id.* at 254 n.3 (citation omitted). The *Fawcett* court concluded that the defendant there was "adequately informed of the charges against him" and that the six-month charging period for the two offenses in that case was "reasonable." *Id.* at 254. We see little meaningful distinction between the individual offenses alleged to have occurred in this case within a four-month period (first offense) and a three-and-one-half-month period (second offense) and the two offenses alleged to have occurred over a six-month period in *Fawcett*.

■

¶ 20. The fifth and sixth factors relate to the passage of time between the alleged period for the crime and the defendant's arrest and the duration between the date of the indictment and the alleged offense. Regarding these factors, the *Miller* court observed that they address "the problem of dimmed memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations." *Miller*, 257 Wis. 2d 124, ¶ 35. While the period of time here between when the assaults allegedly occurred and when L.T. reported them to police and charges were filed—approximately twelve

190

and fifteen years—is longer than the time periods in *Fawcett*, *R.A.R.*, and *Miller*, that fact alone does not make the charges unconstitutional.

¶ 21. In considering these two factors, we cannot ignore our supreme court's fairly recent decision in *State v. McGuire*, 2010 WI 91, 328 Wis. 2d 289, 786 N.W.2d 227. The defendant in *McGuire* was charged with five counts of indecent behavior with a child occurring between 1966 and 1968. *Id.*, ¶ 1. The issue before the court which is relevant to this case was whether the defendant's due process rights were violated because approximately *thirty-six years* had passed between the offenses and the charges. *Id.*, ¶ 28. The defendant argued that his defense had been prejudiced because key witnesses had died and evidence had been destroyed. *Id.*, ¶ 44. The court first observed that "[t]he statute of limitations is the principal device . . . to protect against prejudice arising from a lapse of time between the date of an alleged offense and an arrest." *Id.*, ¶ 45 (citations omitted). The court then held that a defendant claiming his due process rights have been violated by delay "must show '(1) actual prejudice as a result of [the] delay; and (2) [that] the delay arose out of an improper purpose, [such as to] give the State a tactical advantage over the defendant.' " *Id.* (citation omitted).

¶ 22. Here, Kempainen has not articulated any actual prejudice he would suffer as a result of the time that passed between the alleged commission of the offenses and the filing of the charges. Further, he has made no allegation that the State delayed in filing the charges, much less that it did so for an improper purpose. Indeed, the complaint shows that L.T. first reported the alleged assaults to police in October 2012. The police investigated the allegations, and after receiv-

ing statements from other witnesses corroborating key parts of L.T.'s report, the State filed charges in December 2012, two months after L.T.'s report.

¶ 23. The last *Fawcett* factor relates to the victim's ability to particularize the date and time of the alleged offense. Regarding the first alleged assault, while L.T. only provided a period of time, as opposed to a particular date, that period of time was specific. She reported that the incident occurred in the beginning of her second-grade school year, which timing she recalled because it corresponded with when the family had moved to Sheboygan. Further, she provided many specific details regarding the alleged assault including nuances of the particular sexual acts, and that it occurred in the middle of the night, Kempainen smelled of alcohol, she was in pajamas, and Kempainen was on the inside of the living room couch while she was on the outer edge. Regarding the second allegation, while L.T. again only provided a time period—explaining that it occurred when she was in the sixth grade and it was warm outside—she also reported that the assault took place on her mom and Kempainen's bed at the same residence as the first incident and around 4:30 p.m., which she recalled because it was around the time she was supposed to perform her regular responsibility of waking Kempainen for work. She further reported that she had been lying on the bed watching Disney while waiting to wake Kempainen, he awoke on his own and began rubbing her back under her clothes, he moved his hand to the front and felt her breasts, and she immediately left and went to the home of a specifically named friend.

¶ 24. Because the date of the commission of the crimes is not a material element of the charged offenses

192

here, a date need not be "precisely alleged." *See Fawcett*, 145 Wis. 2d at 250. And because L.T. was a child at the time of the alleged assaults, "a more flexible application of notice requirements is required and permitted." *Id.* at 254. Any vagueness in L.T.'s memory will more properly go to her credibility and the weight of her testimony. *See id.* Such vagueness "ought not prevent the prosecution of one alleged to have committed the act." *Id.* Considering the *Fawcett* factors, we conclude that the charging periods are reasonable and the details in the complaint provide Kempainen with adequate notice of the charges against him.

¶ 25. Though Kempainen has chosen not to argue the second prong of the *Holesome* test—whether the charges are pled so that conviction or acquittal will bar future prosecutions for the same offenses—we address it nonetheless to ensure completeness regarding his challenge to the sufficiency of the charges. We conclude, as did the *Fawcett* court in the case before it, that double jeopardy is not a realistic concern here. As the State acknowledges, if Kempainen is convicted or acquitted on either or both of these charges, he may not again be charged with any sexual assault arising from these incidents. Both charges include specific details that will allow a future court, should the need arise, to readily determine whether subsequent allegations relate to the same incidents. As the *Fawcett* court noted:

> [D]ouble jeopardy protection can also be addressed in any future prosecution growing out of this incident. If the state is to enjoy a more flexible due process analysis in a child victim/witness case, it should also endure a rigid double jeopardy analysis if a later prosecution based upon the same transaction during the same time frame is charged.

193

*Fawcett*, 145 Wis. 2d at 255. We agree, and conclude that the second prong of the *Holesome* test is satisfied.

## CONCLUSION

¶ 26. For the foregoing reasons, we reverse the circuit court's order dismissing the charges and remand for reinstatement of the complaint and information and for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.