# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1531-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Appellant, |
| |     v. |
| | Brian S. Kempainen, |
| |         Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 354 Wis. 2d 177, 848 N.W.2d 320
(Ct. App. 2014 – Published)
PDC No:2014 WI App 53

| | |
|---|---|
| OPINION FILED: | March 19, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 8, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Sheboygan |
|   JUDGE: | Terence T. Bourke |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the defendant-respondent-petitioner, there were briefs by *Melissa L. Mroczkowski* and *Kirk Obear and Associates*, Sheboygan, and oral argument by *Melissa L. Mroczkowski.*

    For the plaintiff-appellant, the cause was argued by *Sarah L. Burgundy*, assistant attorney general, and with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1531-CR
(L.C. No. 2012CF691)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Appellant,**

  **v.**

**Brian S. Kempainen,**

      **Defendant-Respondent-Petitioner.**

**FILED**

MAR 19, 2015

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J. We review a published decision of the court of appeals,[1] which reversed the circuit court's[2] dismissal of the criminal complaint and information filed against Brian S. Kempainen ("Kempainen"). On December 21, 2012, the Sheboygan County District Attorney's Office filed a criminal complaint alleging Kempainen had engaged in two counts

_____

[1] State v. Kempainen, 2014 WI App 53, 354 Wis. 2d 177, 848 N.W.2d 320.

[2] The Honorable Terence T. Bourke, presiding.

of sexual assault of a child under 13 years of age, contrary to Wis. Stat. § 948.02(1) (2001-02).[3] The complaint alleged that the first count of sexual assault occurred "on or about August 1, 1997 to December 1, 1997." The complaint alleged that the second count of sexual assault occurred "on or about March 1, 2001 to June 15, 2001."

---

[3] All subsequent references to the Wisconsin Statutes are to the 2001-02 version unless otherwise indicated.

Wisconsin Stat. § 948.02(1) provides that "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony." Wisconsin Stat. § 948.02(1) (1997-98), applicable to count one of the complaint and information, is identical to the 2001-02 version.

"Sexual contact" is defined, in relevant part, by Wis. Stat. § 948.01(5) as:

(a) Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

¶2 Kempainen moved the circuit court to dismiss the complaint and information[4] on the grounds that they were "not sufficiently definite and the defendant [was] not adequately informed of the charges against him" because the time periods in which the alleged crimes were committed were "too vague," such that he could not plead for, or prepare a defense against, "when" the crimes occurred. The circuit court granted Kempainen's motion and dismissed the complaint and information. The State appealed. In a published decision, the court of appeals reversed the circuit court and remanded the case with the instruction that the complaint and information be reinstated. The court of appeals relied on State v. Fawcett, 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988) (setting forth seven[5] "reasonableness" factors that a court may consider in

---

[4] "The information is the charging document to which a defendant must enter a plea." State v. Copening, 103 Wis. 2d 564, 576, 309 N.W.2d 850 (Ct. App. 1981) (citing Pillsbury v. State, 31 Wis. 2d 87, 93, 142 N.W.2d 187 (1966)). "A defendant has the benefit of both the factual allegations required in the complaint and the final statutory charges alleged in the information." Id. However, "[t]he factual allegations relied on by the state which satisfy the elements of the crime are more likely found in the complaint. The facts recited in the complaint need not be repeated in the information." Id. at 577. Thus, when discussing the sufficiency of the factual allegations against Kempainen, we refer to the complaint.

[5] These seven factors are:

(1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been

(continued)

3

assessing the sufficiency of a complaint in a child sexual assault case), as a basis for its determination that Kempainen received adequate notice as to the nature of the charges against him.

¶3 Two issues are presented for our consideration: 1) whether a court is prohibited from considering the first three factors set forth in Fawcett when the defendant does not claim that the State could have obtained a more definite date through diligent efforts;[6] and 2) whether the complaint and information charging Kempainen with two counts of sexual assault of a child under 13 years of age provided adequate notice to satisfy Kempainen's due process right to plead and prepare a defense.

¶4 First, we hold that in child sexual assault cases courts may apply the seven factors outlined in Fawcett, and may consider any other relevant factors necessary to determine

---

discovered immediately; (4) the length of the alleged period of time in relation to the number of individual criminal acts alleged; (5) the passage of time between the alleged period for the crime and the defendant's arrest; (6) the duration between the date of the indictment and the alleged offense; and (7) the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

State v. Fawcett, 145 Wis. 2d 244, 253 426 N.W.2d 91 (Ct. App. 1988).

[6] In State v. R.A.R., 148 Wis. 2d 408, 411, 435 N.W.2d 315 (Ct. App. 1988), the court of appeals concluded that a court may consider the first three Fawcett factors only in situations where the defendant claims the State could have obtained a more definite charging period through diligent efforts.

whether the complaint and information "states an offense to which [the defendant can] plead and prepare a defense." Holesome v. State, 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968). No single factor is dispositive, and not every Fawcett factor will necessarily be present in all cases. Second, we hold that the complaint and information provided adequate notice of when the alleged crimes occurred and thus did not violate Kempainen's due process right to plead and prepare a defense. We therefore affirm the court of appeals and remand to the circuit court with the instruction to reinstate the complaint and information against Kempainen.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶5 On December 21, 2012, the Sheboygan County District Attorney's Office filed a complaint charging Kempainen with two counts of sexual assault of a child under the age of 13. The first count of the complaint alleged that Kempainen had sexual contact with his stepdaughter, L.T., "on or about August 1, 1997 to December 1, 1997." The second count alleged that Kempainen had sexual contact with L.T. "on or about March 1, 2001 to June 15, 2001." L.T. was 8 years old when the first assault occurred and either 11 or 12 years old when the second assault occurred.

¶6 L.T. first reported the alleged assaults on October 25, 2012, to Detective Brian Retzer of the Sheboygan Police Department. L.T. told Detective Retzer that her stepfather, Kempainen, sexually assaulted her sometime around the start of the school year when she was in the second grade. L.T. recalled this specific time period because it corresponded with the

family's move to Sheboygan. According to L.T., she was sleeping on the couch in the living room when, in the middle of the night, Kempainen laid down next to her so that he was on the innermost area of the couch and she was on its edge. Kempainen allegedly began to rub L.T.'s vagina through her pajamas and then put L.T.'s hand down his sweatpants and compelled her to massage his penis for approximately two minutes. Next, Kempainen allegedly performed oral sex on L.T. for "a long time." L.T. told Detective Retzer that she was "very scared and nervous" while this was happening. Eventually, Kempainen "passed out" on the couch, and L.T. immediately got up, went into the kitchen, and cried. She then went somewhere else in the house to sleep.

¶7 L.T. stated that approximately one week after this incident, Kempainen asked her to come down to the basement with him. Once there, Kempainen allegedly told her that he did not want her to tell her mother what had happened. He also told L.T. that "I know you were bad" and that he would get in trouble if she told her mother what happened.

¶8 The second assault occurred when L.T. was in the sixth grade and it was "warm outside." During this time, L.T. was responsible for waking Kempainen for work around 4:30 PM each day. On one such day, L.T. was waiting to wake up Kempainen and was lying sideways at the foot of the bed watching "Disney." Kempainen woke up and began to rub L.T.'s back under her clothes. Eventually, Kempainen allegedly moved his hands to the

front of her chest and touched L.T.'s breasts. L.T. immediately became scared and left her home to go to a friend's house.

¶9 L.T. did not immediately tell anyone about either incident because she was afraid that her mother would be mad at her and because she was afraid of what her mother might do to Kempainen. When she was in eighth grade she did tell a close friend, J.B., about the assaults; however, J.B. did not tell anyone.

¶10 Detective Retzer asked L.T. why she chose to come forward now, after such a long time had passed. L.T., who was 23 years old at the time of the interview, explained that she confided in her first serious boyfriend what Kempainen had done. The boyfriend urged L.T. to notify the police and to tell her mother, but L.T. remained too afraid to tell anyone. In early October 2012, L.T.'s then ex-boyfriend informed L.T.'s mother about Kempainen's alleged sexual assault of L.T. At this point, L.T. finally told her mother what had happened.

¶11 On November 28, 2012, Detective Retzer contacted L.T.'s ex-boyfriend who confirmed much of L.T.'s account. He also added that L.T. told him that "she felt responsible for [the assaults] and didn't want to talk about it."

¶12 Detective Retzer arrested Kempainen on December 19, 2012, for the alleged sexual assaults of L.T. The Sheboygan County District Attorney's Office filed the complaint on December 21, 2012, and Kempainen made his initial appearance before the circuit court that same day. An information was filed on December 26, 2012. On January 29, 2013, Kempainen

7

moved the circuit court to dismiss the complaint and information because it was "not sufficiently definite and [he was] not adequately informed of the charges against him." Specifically, Kempainen argued that the "several month time spans in which the crimes are alleged to have occurred are too vague to provide the defendant with adequate notice of the charges against him."

¶13 The circuit court ordered briefing on Kempainen's motion and held a hearing on May 21, 2013. Relying on Fawcett and State v. R.A.R., 148 Wis. 2d 408, 435 N.W.2d 315 (Ct. App. 1988) (limiting a court's consideration of the first three Fawcett factors to situations where the defendant claims the State could have obtained a more definite charging period through diligent efforts), the circuit court concluded that the charges against Kempainen "are not sufficiently definite and that [Kempainen] was not adequately informed of the charges." Citing footnote two of the Fawcett decision, the circuit court stated that because Kempainen had not claimed that the State could have obtained a more definite charging period there was "no need to go into the first three [Fawcett] factors and you just skip right to the fourth factor." The circuit court then dismissed the complaint and information.

¶14 The State appealed. In a published opinion, the court of appeals reversed the circuit court. State v. Kempainen, 2014 WI App 53, ¶1, 354 Wis. 2d 177, 848 N.W.2d 320. The court of appeals determined that "[b]ecause the date of the commission of the crimes is not a material element of the charged offenses here, a date need not be precisely alleged" in the complaint and

information. Id., ¶24 (citations omitted). "Any vagueness in L.T.'s memory will more properly go to her credibility and the weight of her testimony." Id. Thus, the court of appeals concluded that "the charging periods are reasonable and the details in the complaint provide Kempainen with adequate notice of the charges against him." Id.

¶15 Kempainen petitioned this court for review, which we granted on September 18, 2014.

## II. STANDARD OF REVIEW

¶16 Whether the time period alleged in a complaint and information is sufficient to provide notice to the defendant is a question of constitutional fact that we review de novo. Fawcett, 145 Wis. 2d at 249. "The criminal complaint is a self-contained charge which must set forth facts that are sufficient, in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and that the defendant is probably culpable." Id. at 250 (citing State v. Hoffman, 106 Wis. 2d 185, 197, 316 N.W.2d 143 (Ct. App. 1982)). The sufficiency of a pleading is a question of law reviewed independently. Id. In reviewing a complaint, our analysis is restricted to the charging document and we do not consider extrinsic evidence.

¶17 In order to satisfy the requirements of the United States and Wisconsin Constitutions, the charges in the complaint and information "must be sufficiently stated to allow the defendant to plead and prepare a defense." Id. When reviewing

9

the sufficiency of the complaint and information, we consider two factors: "whether the accusation is such that the defendant [can] determine whether it states an offense to which he [can] plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense." Holesome, 40 Wis. 2d at 102.[7]

### III. DISCUSSION

¶18  We first consider the appropriate factors courts may use to determine whether a defendant in a child sexual assault case has received sufficient notice of the charges against him. We hold that in child sexual assault cases courts may apply the seven factors outlined in Fawcett, and may consider any other relevant factors necessary to determine whether the complaint and information "states an offense to which [the defendant can] plead and prepare a defense." Id.  We then apply the Fawcett factors to the facts of this case and conclude that Kempainen received adequate notice of the charges against him.

A.   Reviewing Courts May Consider All of the Fawcett Factors As Well As Any Other Relevant Factors.

¶19  Due process requires that a defendant in a criminal proceeding must be "informed of the nature and cause of the accusation against him."  Id.  This right is guaranteed by the Sixth Amendment of the United States Constitution and by Article

---

[7] Neither Kempainen nor the State raise the double jeopardy factor, whether conviction would be a bar to another prosecution.  Therefore, we do not address it.

I, Section 7 of the Wisconsin Constitution.[8] As we explained in _Holesome_, in order to determine whether there has been a violation of the defendant's due process right to know the "nature and cause of the accusation," courts must look to whether the defendant can determine if the complaint and information "states an offense to which he [can] plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense." _Id._ When applying this test, we have focused our inquiry on the facts alleged in the complaint and the elements of the crimes involved. _See e.g._, _State v. Connor_, 2011 WI 8, 331 Wis. 2d 352, 795 N.W.2d 750; _Blenski v. State_, 73 Wis. 2d 685, 245 N.W.2d 906 (1976); _State v. George_, 69 Wis. 2d 92, 230 N.W.2d 253 (1975).

¶20 Thus, under _Holesome_, courts are to consider whether the complaint alleges facts that identify the alleged criminal conduct with reasonable certainty. _See_ _Fink v. City of Milwaukee_, 17 Wis. 26, 28 (1863) ("It is an elementary rule of criminal law, that . . . the facts and circumstances which

---

[8] The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. Amend. VI.

Article I, Section 7 of the Wisconsin Constitution has a nearly identical provision that provides, in pertinent part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to demand the nature and cause of the accusation against him." Wis. Const. art., I, § 7.

constitute the offense . . . must be stated with such certainty and precision that the defendant may be enabled to judge whether they constitute an indictable offense or not . . . ."). Application of the Holesome test necessarily depends on the nature of the specific crime(s) alleged. Therefore, courts are to determine whether a specific complaint and information provide the defendant with adequate notice of the charges on a case-by-case, or count-by-count, basis.

¶21 Child sexual assaults are difficult crimes to detect and to prosecute, as typically there are no witnesses except the victim and the perpetrator. Fawcett, 145 Wis. 2d at 249. Often the child is assaulted by a trusted relative, and does not know whom to turn to for protection. Id. The child may have been threatened, or, as is often the case, may harbor a natural reluctance to come forward. Id. "These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory." Id. Thus, "[y]oung children cannot be held to an adult's ability to comprehend and recall dates and other specific events." Id. "A person should not be able to escape punishment for such a . . . crime because he has chosen to take carnal knowledge of an infant too young to testify clearly as to the time and details of such . . . activity." State v. Sirisun, 90 Wis. 2d 58, 65-66 n.4, 279 N.W.2d 484 (Ct. App. 1979) (citation omitted). "However, no matter how abhorrent the conduct may be, a defendant's due process [rights] . . . may not be ignored or trivialized." Fawcett, 145 Wis. 2d at 250.

12

¶22 Because "[t]ime is not of the essence in [child] sexual assault cases," when the date of the commission of the crime is not a material element of the offense it need not be precisely alleged.  Id. at 250; see also Hoffman, 106 Wis. 2d at 198.  A "more flexible application of notice requirements is required and permitted [in child sexual assault cases].  The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance." Fawcett, 145 Wis. 2d at 254.

¶23 In Fawcett, the court of appeals properly interpreted Holesome by discussing seven factors which "assist us in determining" whether the complaint provides the defendant notice of the "nature and cause of the accusation against him" in child sexual assault cases.  Fawcett, 145 Wis. 2d at 253.  The seven factors considered by the court were taken from a New York case, People v. Morris, 461 N.E.2d 1256 (N.Y. 1984).  In Morris, the New York Court of Appeals cautioned against a bright-line rule for determining whether a complaint provides adequate notice to the defendant.  "It is . . . important to note that the requirements for a valid indictment will vary with the particular crime involved, and what is sufficient to charge [one crime] would be insufficient with respect to many other crimes." Morris, 461 N.E.2d at 294.  Accordingly, New York adopted what is essentially a totality of the circumstances test, grounded in reasonableness, for notice in criminal proceedings.  This test

is consistent with our holding in Holesome and our prior case law.

¶24 The Fawcett court concluded that the Morris "reasonableness" test was consistent with Holesome, and, as a result, applied the following factors to determine "whether the Holesome test is satisfied":

(1) The age and intelligence of the victim and other witnesses;

(2) The surrounding circumstances;

(3) The nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately;

(4) The length of the alleged period of time in relation to the number of individual criminal acts alleged;

(5) The passage of time between the alleged period for the crime and the defendant's arrest;

(6) The duration between the date of the indictment and the alleged offense; and

(7) The ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.

Fawcett, 145 Wis. 2d at 253 (formatting added). We agree that these are proper factors to apply in cases involving child sexual assaults, in that they provide guidance to courts when applying the Holesome test and help determine whether a complaint and information are sufficient to satisfy due process.

¶25 However, in R.A.R. the court of appeals refused to apply all seven Fawcett factors. In R.A.R., the court determined that "the first three factors apply when the

14

defendant claims that the State could have obtained a more definite date through diligent efforts."[9] R.A.R., 148 Wis. 2d at 411. Because the defendant in R.A.R. did not claim that the State could have obtained a more definite date through diligent efforts, the court did not consider the first three Fawcett factors. Id. As a result, the court of appeals considered only the last four Fawcett factors and held that the "charging periods set forth . . . are not sufficiently definite and that R.A.R. was not adequately informed of the charges against him." Id. at 413.

¶26 The court's conclusion in R.A.R. was incorrect. The court of appeals' decision below correctly noted that R.A.R. appeared to be in conflict with Fawcett. Kempainen, 354 Wis. 2d 177, ¶¶13-14. Specifically, the court noted that

> in Fawcett, we stated that a court 'may look to the [first three factors]' when evaluating whether the prosecution was diligent, and further, that when assessing the overall reasonableness of the complaint under Holesome, relevant factors 'include but are not limited to' the last four factors. Significantly, we then concluded that all seven factors can 'assist us in determining whether the Holesome test is satisfied' and proceeded to apply all seven factors.

Id., ¶13 (internal citations omitted). The court of appeals thus determined that "[t]o the extent R.A.R. suggests courts may

---

[9] These factors are "(1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; and (3) the nature of the alleged offense, including whether it is likely to occur at a specific time or to have been discovered immediately." R.A.R., 148 Wis. 2d at 411 (quoting Fawcett, 145 Wis. 2d at 253).

15

not consider the first three Fawcett factors unless a defendant claims a lack of prosecutorial diligence, we cannot follow it." Id., ¶14.

¶27 The court of appeals also explained that "only the supreme court . . . has the power to overrule, modify or withdraw language from a published opinion of the court of appeals." Id. (quoting Cook v. Cook, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997)).[10] Furthermore, "[t]he ultimate question is whether the Holesome test has been met. The seven Fawcett factors are tools to assist—not limitations upon—courts in answering this question. A court may consider all of these factors, and others, if it deems them helpful in determining whether the requirements of Holesome are satisfied." Id., ¶15.

¶28 The court of appeals reasoning in the present case is correct. Courts are not confined solely to the seven Fawcett factors or any subset therein. Rather, courts may consider these factors and any other relevant factors helpful in determining whether a complaint is sufficient to satisfy due process. Because notice is concerned with whether the charging documents are sufficiently detailed so as to provide the defendant an opportunity to plead and prepare a defense, courts are not confined to only one set of factors when conducting

---

[10] Both Fawcett and R.A.R. were decided in 1988. However, Fawcett was decided May 18, 1988. R.A.R. was decided on December 22, 1988.

16

their inquiry. The <u>Holesome</u> test requires courts to consider the totality of the circumstances surrounding the nature of the accusations. <u>Cf.</u> <u>State v. Gaudesi</u>, 112 Wis. 2d 213, 219, 332 N.W.2d 302 (1983) ("The test under Wisconsin law of the sufficiency of the complaint is one of minimal adequacy, not in a hyper[-]technical but in a common sense evaluation, in setting forth the essential facts establishing probable cause.") (internal citations omitted).[11] To the extent that <u>R.A.R.</u> conflicts with the holding in <u>Fawcett</u>, and thus limits the factors a court may consider when applying the <u>Holesome</u> test, it is overruled.

¶29 There is good reason to overrule this portion of <u>R.A.R.</u> First, a technical application of <u>R.A.R.</u>'s reasoning allows the defendant to plead so as to escape consideration of three factors that will often weigh against him. Such an application is ripe for manipulation as a defendant could escape the first three <u>Fawcett</u> factors by simply remaining silent and refusing to argue that the State could have obtained a more definite date. It would always be in a defendant's best interest to do this. Further, the first three factors (the age and intelligence of the victim and other witnesses, the

---

[11] In order to determine whether a complaint establishes probable cause, courts typically consider the following questions: who is charged; what is the person charged with; when did the alleged offense take place; where did the alleged offense take place; why is this particular person being charged; and who says so? <u>State v. Gaudesi</u>, 112 Wis. 2d 213, 219, 332 N.W.2d 302 (1983).

surrounding circumstances, and the nature of the offense) are especially important given the nature of child sexual assault cases. As the Fawcett court noted:

> [t]he child may have been assaulted by a trusted relative or friend and not know who to turn to for assistance and consolation. The child may have been threatened and told not to tell anyone. Even absent a threat, the child might harbor a natural reluctance to reveal information regarding the assault. These circumstances many times serve to deter a child from coming forth immediately. As a result, exactness as to the events fades in memory.

Fawcett, 145 Wis. 2d at 249. Second, the first three Fawcett factors necessarily inform other factors, such as the seventh factor, "the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense." Id. at 253. It would be extremely difficult to consider the ability of a victim to particularize the date and time of the alleged crime without also considering the victim's age and intelligence, the surrounding circumstances, or the nature of the offense. Finally, the R.A.R. decision rests upon a very narrow interpretation of Morris, which is at odds with its full holding. Neither Morris nor Fawcett restrict a court's inquiry into the sufficiency of the charges based on the nature of the defendant's challenge.

¶30 In sum, courts must apply the Holesome test by looking at the totality of the circumstances surrounding the challenged complaint and information. In cases involving the alleged sexual assault of a child, courts may be guided by the Fawcett factors, as well as any other relevant factors necessary for a

18

determination of whether the complaint and information "states an offense to which [the defendant can] plead and prepare a defense." Holesome, 40 Wis. 2d at 102.

B. The Complaint and Information Are Sufficient to State an Offense to Which Kempainen Can Plead and Prepare a Defense.

¶31 Having laid out the appropriate test for courts to follow, we now turn to the application of the Fawcett factors to Kempainen's case. We hold that the complaint and information provided adequate notice and thus did not violate Kempainen's due process right to plead and prepare a defense.

¶32 As the court of appeals did in both State v. Miller, 2002 WI App 197, ¶30, 257 Wis. 2d 124, 650 N.W.2d 850, as well as Kempainen, we will "consider together the first three [Fawcett] factors," though courts may consider these factors separately. Kempainen, 354 Wis. 2d 177, ¶16; Miller, 257 Wis. 2d 124, ¶30. These factors are (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; and (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately. Fawcett, 145 Wis. 2d at 253.

¶33 In the instant case, the victim was 8 years old when the first assault occurred and either 11 or 12 years old when the second assault occurred. Kempainen, the alleged perpetrator, was the victim's stepfather and held a position of authority over her. As the court of appeals explained, Kempainen's position of dominance was highlighted by the sexual

19

acts allegedly performed by him, "that is, he could do essentially whatever he wanted to [L.T.]" Kempainen, 354 Wis. 2d 177, ¶16. In addition, approximately one week after the first incident, Kempainen allegedly called L.T. into the basement of the home and told her that she had been "bad" and warned her that if she told her mother, he would get in trouble. Following the second assault, L.T. was so afraid that she left her home and went to a friend's house. A young girl in this situation would understandably be reluctant to tell anyone about the assaults at the time they occurred, and L.T.'s statements indicate that she was afraid of what would happen if she came forward. It is also unlikely that the assaults would have occurred at a specific time. Kempainen was L.T.'s stepfather, they lived in the same house, and the circumstances of the two assaults do not indicate that they occurred in conjunction with a specific date that would have stood out in a child's mind. Rather, they occurred during otherwise normal time periods. Given these circumstances, we conclude that the first three Fawcett factors weigh in favor of notice.

¶34 The fourth Fawcett factor is the length of the alleged period of time in relation to the number of individual criminal acts alleged. Here, the first assault occurred during a four month period, and the second assault occurred during a three-and-a-half month period. Kempainen claims that these ranges prevent him from preparing an alibi defense and are overly broad. We are unpersuaded. First, simply because a defendant wishes to assert an alibi defense does not change the fact that

20

"where the date of the commission of the crime is not a material element of the offense charged, it need not be precisely alleged," Fawcett, 145 Wis. 2d at 250, nor is time "of the essence in sexual assault cases." Id. In addition,

> [i]f we required that a complaint be dismissed for lack of specificity when a defendant indicated a desire to assert an alibi defense, such a holding would create potential for an untenable tactic: a defendant would simply have to interpose an alibi defense in order to escape prosecution once it became apparent that a child victim/witness was confused with respect to the date or other specifics of the alleged criminal event. We decline to adopt such a rule.

Id. at 254 n.3 (internal citation omitted). We agree, and decline to adopt such a rule. Ultimately, there is "little meaningful distinction between the individual offenses alleged to have occurred in this case within a four-month period (first offense) and a three-and-one-half-month period (second offense) and the two offenses alleged to have occurred over a six-month period in Fawcett." Kempainen, 354 Wis. 2d 177, ¶19. Thus, the fourth Fawcett factor weighs in favor of notice.

¶35 The next two factors are related and take into account the passage of time between the alleged crime(s) and the defendant's arrest, and the length of time between the filing of the complaint and the alleged crime(s). These two factors "address the problem of dimmed memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations." Miller, 257 Wis. 2d 124, ¶35. In this case, the passage of time is the same for each factor. The first alleged assault occurred between

21

August 1 and December 1, 1997, and the second between March 1 and June 15, 2001. A total of 12 and 15 years elapsed between the alleged assaults and Kempainen's arrest and indictment.

¶36 Typically, "[t]he statute of limitations is the principal device . . . to protect against prejudice arising from the lapse of time between the date of an alleged offense and an arrest." Kempainen, 354 Wis. 2d 177, ¶21 (quoting State v. McGuire, 2010 WI 91, ¶45, 328 Wis. 2d 289, 786 N.W.2d 227). Here, a charge of first degree sexual assault of a child "may be commenced at any time," meaning there is no statute of limitations for the charges against Kempainen. Wis. Stat. § 939.74(2)(a)1 (2011-12). However, "the statute of limitations is not the sole measure of a defendant's rights with respect to pre-indictment delay." McGuire, 328 Wis. 2d 289, ¶45. As we have stated, our test here is whether, under the totality of the circumstances, the complaint and information allege facts such that the defendant can plead and prepare a defense. We cannot say that the passage of 12 to 15 years alone deprives Kempainen of due process. Rather, we must consider why the delay occurred and how it impacts Kempainen's ability to prepare his defense.

¶37 The complaint provides an explanation for the lengthy passage of time between the alleged assaults and Kempainen's arrest and charging. In response to Detective Retzer's questions, L.T. explained that she did not come forward until 2012 for a variety of reasons. L.T. explained that she was afraid that her mother would be mad at her, and that she was afraid of what her mother would do to Kempainen. It was not

22

until L.T.'s boyfriend informed L.T.'s mother of the alleged assaults in early October 2012, that L.T. finally came forward.

¶38 Generally, "child molestation is not an offense which lends itself to immediate discovery. Revelation usually depends upon the ultimate willingness of the child to come forward." Fawcett, 145 Wis. 2d at 254. There is no indication that L.T.'s delay in reporting the alleged assaults was for any improper purpose. Nor is there any indication that the investigation was delayed once the assaults were reported. It may be true that the passage of 12 and 15 years from the dates of the assaults makes a particular defense more difficult; it is equally true, however, that it makes prosecution of the offenses more difficult. Further, if Kempainen wishes to challenge L.T.'s explanation for waiting to come forward, that is a question of credibility "left to the province of the jury." Miller, 257 Wis. 2d 124, ¶20. Indeed, due to the nature of the allegations, L.T.'s credibility will likely be a central issue at trial. This is not a case of mistaken identity, and an alibi defense is not likely to be available to Kempainen. See People v. Jones, 792 P.2d 643, 657 (Cal. 1990) (noting that "if the defendant has lived with the victim for an extensive, uninterrupted period and therefore had continuous access to the victim, neither alibi nor wrongful identification is likely to be an available defense"). A challenge to the victim's credibility does not, however, affect "the legality of the prosecution in the first instance." Fawcett, 145 Wis. 2d at 254.

23

¶39 Even though there is no indication of impropriety due to the passage of time in this case, in order to satisfy due process we must still consider how it impacts Kempainen's ability to prepare a defense. Kempainen argues that the passage of time prevents him from putting forth an alibi defense, but, as we have already explained, a victim is not required to allege a specific date for the assault simply because a defendant has a preferred defense. To do so would place "an impossible burden" on the State to "pinpoint dates" in order to satisfy due process notice requirements. State v. Stark, 162 Wis. 2d 537, 545, 470 N.W.2d 317 (Ct. App. 1991). In addition, the mere existence of alibi evidence "does not raise reasonable doubt as a matter of law[, and] is merely additional evidence which can be weighed and disregarded if not believed by the jury." Id., at 548 (citations omitted). Kempainen has not articulated any way in which the charging periods have impaired his ability to prepare a defense, only that the charges make it difficult to prepare his preferred defense. Thus, because the passage of time has not impaired Kempainen's ability to prepare a defense, the fifth and sixth Fawcett factors weigh in favor of notice.

¶40 The final Fawcett factor concerns the victim's ability to particularize the date and time of the alleged offense. Fawcett, 145 Wis. 2d at 253. While the complaint does not provide a specific date for either assault, it does provide specific times of day. The first assault allegedly occurred late at night while L.T. slept on the living room couch. The second assault allegedly occurred at approximately 4:00 PM,

24

while L.T. waited to wake Kempainen for work. This precision in identifying the time of day the assaults occurred, together with the detail L.T. provided regarding the specific sexual acts done to her, indicates that L.T. was able to identify the time of day and the nature of the alleged assaults with reasonable certainty.

¶41 Taking account of all of the circumstances surrounding the charges against Kempainen, we hold that he was given sufficient notice of the nature of the charges against him and that he is able to plead and prepare a defense. Despite the passage of 12 and 15 years from the dates of the alleged assaults, the complaint puts forth sufficient detail such that Kempainen was aware of the charges against him.

## IV. CONCLUSION

¶42 We hold that in child sexual assault cases, courts may apply the seven factors outlined in Fawcett, and may consider any other relevant factors necessary to determine whether the complaint and information "states an offense to which [the defendant can] plead and prepare a defense." Holesome, 40 Wis. 2d at 102. No single factor is dispositive, and not every Fawcett factor will necessarily be present in all cases. Second, we hold that the complaint and information provided adequate notice of when the alleged crimes occurred and thus did not violate Kempainen's due process right to plead and prepare a defense. We therefore affirm the court of appeals and remand to the circuit court with the instructions to reinstate the complaint and information against Kempainen.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause remanded for reinstatement of the complaint and information and for further proceedings.